1 | Brian E. Claypool, Esq., State Bar# 134674
2 | **THE CLAYPOOL LAW FIRM**
  | 1055 East Colorado Blvd., 5th Floor
3 | Pasadena, CA 91106
  | Telephone: (626) 240-4616
4 | Facsimile: (626) 796-9951

5 | Attorney for Plaintiff,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RIESE, an individual | Case No.: CV-12-3723 RS  [Honorable Richard Seeborg] |
| Plaintiffs, | **PLAINTIFF'S OPPOSITION TO DEFENDANT JON ALEXANDER'S SPECIAL MOTION TO STRIKE** |
| vs. | Date: April 25, 2013  Time: 1:30 p.m.  Dept.:3 |
| COUNTY OF DEL NORTE et. al  Defendants | |

- 1 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE

## INTRODUCTION

On or about October 31, 2011 Defendant Alexander through Deputy Attorney General Brian Newman had Plaintiff prosecuted for driving under the influence, child endangerment, and public intoxication in the Del Norte County Superior Court. This prosecution, the harassment of Plaintiff that occurred prior to, during, and following the trial form part of the basis for Plaintiff's seventh and eighth causes of action – malicious prosecution and intentional infliction of emotional distress. It is these causes of action that Defendant Alexander seeks to strike through his motion.

Defendant claims that the malicious prosecution and intentional infliction of emotional distress claims should be stricken due to Defendant Alexander's statements qualifying as protected activity under Code to Civil Procedure section 425.16. Furthermore, Defendant claims Plaintiff cannot demonstrate a probability of prevailing on the merits of these claims. Plaintiff on the other hand, argues that even if the Court finds Defendant Alexander's conduct as being "protected activity", Plaintiff will be able to show a probability of prevailing on the merits and overcoming Defendant Alexander's claims of immunity. Therefore, Plaintiff requests that the Court deny Defendant Alexander's request to strike Plaintiff's seventh and eighth causes of action for malicious prosecution and intentional infliction of emotional distress.

## LEGAL ARGUMENT

California Civil Procedure Code §425.16 requires the Court to dismiss a cause of action against a person for an "act in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."

Section 425.16 provides a procedural mechanism to resolve SLAPP suits that consists of a two-step process. *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76. The Court must first determine whether the defendant made a threshold showing that the challenged cause of action is one "arising from" protected activity. *City of Cotati v.*

*Cashman* (2002) 29 Cal.4th at 76.  The moving defendant must demonstrate that the act of which plaintiff complains were "in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue…" *California Civil Procedure Code §425.16, subd.(b)(1)*. If the Court finds defendant made this showing, then the Court must determine whether the plaintiff has demonstrated a probability to prevail on the merits of the claims in question. *City of Cotati v. Cashman* (2002) 29 Cal. 4th at 76.

If the Court were to find the basis of Plaintiff's seventh and eighth causes of actions arises from "protected activity", it will also find that Plaintiff has demonstrated a probability of prevailing on the merits.

**A.   PLAINTIFF CAN ESTABLISH A PROBABILITY OF SUCCESS WITH RESPECT TO HIS MALICIOUS PROSECUTION CLAIM**

**1.   Plaintiff Can Demonstrate a Probability of Success on His Malicious Prosecution Claim Because he Can Demonstrate a Majority of the Elements Are Met.**

To succeed on a malicious prosecution claim pursuant to California common law, Plaintiff must prove the following:

1) That Defendant was actively involved in causing Plaintiff to be prosecuted [on in causing the continuation of the prosecution];
2) That the criminal proceeding ended in Plaintiff's favor;
3) That no reasonable person in Defendant's circumstances would have believed that there were grounds for causing Plaintiff to be prosecuted;
4) That Defendant acted primarily for a purpose other than to bring Plaintiff to justice;
5) That Plaintiff was harmed; and
6) That Defendant's conduct was a substantial factor in causing Plaintiff's harm. (CACI No. 1500.)

Defendant Alexander was actively involved in causing Plaintiff to be

prosecuted as well as in forcing the continuation of the prosecution. (August 25, 2011 Email by Defendant Alexander, Attached as **Exhibit A**). The basis for the public intoxication charge against Plaintiff was the result of an incident that occurred at a Safeway in Crescent City. Defendant Alexander was the first one on the scene, took witness interviews and took video recordings from the store. (Declaration of Robert Cochran, Attached as **Exhibit B**). Additionally, Defendant Alexander sent the report to Doug Plack requesting that the officer that was at the scene and had let Plaintiff go without arresting him not investigate the case. (See **Exhibit A**). Defendant then went to Deputy Attorney General Brian Newman so that Newman would prosecute Plaintiff to avoid the appearance of impropriety and conflict of interest in having Defendant Alexander prosecute Plaintiff directly due to the history between Plaintiff and Defendant Alexander. (August 25, 2011 Email from Defendant Alexander to Paul Gallegos, Attached as **Exhibit E**). Defendant Alexander and Plaintiff were involved in an extremely heated DA race in 2010 in which Defendant Alexander had Plaintiff's private medical condition exposed on the pages of local newspapers. Animosity already existed between the two due to Plaintiff firing Defendant Alexander when both worked at the County of Del Norte DA's office; Plaintiff was DA and Defendant Alexander was a Deputy DA. Following the filing of charges, Defendant Alexander and Newman met on a weekly basis to discuss the case. (*See* **Exhibit B**). Defendant Alexander was thus very involved in prosecuting Plaintiff and accordingly, Plaintiff has met the first element of his malicious prosecution clam.

      The criminal proceeding against Plaintiff included four charges for driving under the influence, child endangerment, and public intoxication. Plaintiff was found not guilty on all charges, despite Defendant Alexander's malicious conduct. Therefore, the criminal proceeding ended in Plaintiff's favor.

      Defendant Alexander initiated the prosecution of Plaintiff due to his own animosity towards Plaintiff, not due to any reasonable belief he had that there were

- 4 -
PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE

grounds to prosecute Plaintiff. Defendant Alexander was among the first people on the scene the night of the Safeway incident. Police officers on the scene determined that Plaintiff was not under the influence of an illegal substance, and that Plaintiff's conduct was the result of medication he had been prescribed. (*See* **Exhibit A** and CCPD Report, Attached as **Exhibit C**). Defendant then interviewed witnesses, including Safeway manager Brian Ridgeley, who corroborated the police officers' findings that Plaintiff was sober while at the store. Despite all this evidence showing no signs that Plaintiff was intoxicated, Defendant Alexander continued with his plan to file charges against Plaintiff. A reasonable person after speaking with police and witnesses would have realized there were no grounds for causing Plaintiff to be prosecuted.

Defendant Alexander prosecuted Plaintiff due to his own animosity towards Plaintiff, a purpose other than bringing Plaintiff to justice. There was no evidence that demonstrated Plaintiff was intoxicated while at Safeway and yet Defendant Alexander continued with the filing of charges against Plaintiff and with prosecuting him. Further evidence that Defendant Alexander did not prosecute Plaintiff to bring him to justice is Defendant's secret agreement with Plaintiff's ex-wife, Stephanie Riese. (*See* **Exhibit A**). Defendant Alexander promised Ms. Riese immunity from her various violations of a court custody order in return for her giving damaging testimony at Plaintiff's criminal trial. This secret agreement was not disclosed and only came out in the midst of trial during Ms. Riese's inconsistent testimony. (*See* **Exhibit A**).

This attack on Plaintiff is the result of years of dislike between the parties. Defendant Alexander and Plaintiff were involved in an extremely heated DA race in 2010 in which Defendant Alexander had Plaintiff's private medical condition exposed on the pages of local newspapers. Animosity already existed between the two due to Plaintiff firing Defendant Alexander when both worked at the County of Del Norte DA's office; Plaintiff was DA and Defendant Alexander was a Deputy DA.

Furthermore, Defendant Alexander's personal motives for prosecuting Plaintiff is also evidenced in an email two months following the Safeway incident in which Defendant Alexander states that Plaintiff holds a bar card, "For now." (*See* **Exhibit D**).

Accordingly, it is evident that Defendant Alexander prosecuted Plaintiff for reasons other than bringing him to justice.

Plaintiff was harmed by Defendant Alexander's conduct through the harming of his reputation in the community and the subsequent damage this caused Plaintiff's law practice and his ability to have a livelihood.

In conclusion, Plaintiff has met all the requirements of a malicious prosecution claim and the Court should deny Defendant Alexander's motion to strike the claim.

### 2. Government Code Section 821.6 Does Not Provide Immunity to Defendant Alexander For Any Harm Caused by His Investigation and Prosecution of Plaintiff.

Section 821.6 states, "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." *Amylou R. v. County of Riverside* (1994) 28 Cal. App. 4th 1205, 1209-1210.

However, the public immunity under Section 821.6 of the Government Code for instituting or prosecuting any judicial or administrative proceeding does not apply here because Defendant Alexander was acting outside the scope of his employment in instituting the criminal proceeding against Plaintiff. A public employee is not immune from liability in an action for malicious prosecution pursuant to Section 821.6 when that employee has acted outside the scope of employment. *Vivell v. City of Belmont* (1969) 274 Cal. App. 2d 38, 40-41. A public employee is only acting in the course and scope of employment when he is engaged in work that the employee was employed to perform or when the act is an incident to that employee's duty and was performed for

the benefit of the employer and not to serve that employee's own purposes or conveniences. *Sanborn v. Chronicle Publishing Co.* (1976) 18 Cal. 3d 406, 411.

Here, Defendant Alexander conspired with local law enforcement and a Deputy Attorney General to harass and prosecute Plaintiff when there was no probable cause. While Defendant Alexander as the District Attorney for Del Norte County may discuss proposed conduct with law enforcement and seek prosecution of individuals for alleged criminal activities, his position as DA does not allow for him to conspire against one individual for personal reasons. Defendant Alexander's prosecution of Plaintiff was an act incident to his duties as a DA, but the act was performed for Defendant Alexander's benefit and own personal purpose, not for the benefit of his employer, the County of Del Norte. (See **Exhibits A, B, C, D,** and **E**). Defendant Alexander acted to satisfy a personal vendetta against Plaintiff caused by Plaintiff terminating Defendant Alexander when Defendant was a Deputy DA and Plaintiff was a DA. The animosity Defendant Alexander felt towards Plaintiff was further evidenced in the 2010 heated DA election and his continued prosecution of Plaintiff. There were no reasonable grounds for filing charges against Plaintiff, which Defendant knew after speaking with witnesses and due to responding officers concluding Plaintiff was sober. It was also not for the benefit of the County for law enforcement to be engaged in harassing and pulling over Plaintiff to satisfy Defendant Alexander's whim.

Therefore, because Defendant Alexander's conduct was performed for his own benefit, and not for the benefit of his employer, the County of Del Norte, Defendant Alexander was acting outside the scope of his employment and is actions do not fall under Section 821.6 immunity.

**B.     PLAINTIFF CAN ESTABLISH A PROBABILITY OF SUCCESS WITH RESPECT TO HIS INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM**

### 1. Plaintiff Can Demonstrate a Probability of Success of His Intentional Infliction of Emotional Distress Claim Because He can Demonstrate that Defendant Alexander Acted Outrageously and that His Actions were a Substantial Part in Causing Plaintiff's Severe Emotional Distress.

Pursuant to California common law, Plaintiff must prove the following:

1) That Defendant's conduct was outrageous;
2) That Defendant intended to cause Plaintiff emotional distress or that Defendant acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present when the conduct occurred;
3) That Plaintiff suffered severe emotional distress; and
4) That Defendant's conduct was a substantial factor in causing Plaintiff's severe emotional distress. (CACI No. 1600.)

Outrageous conduct "is conduct so extreme that it goes beyond all possible bounds of decency. Conduct is outrageous of a reasonable person would regard the conduct as intolerable in a civilized community. Outrageous conduct does not include trivialities such as indignities, annoyances, hurt feelings, or bad manners that a reasonable person is expected to endure." (CACI No. 1602.)

A civilized community expects its law enforcement and elected officials, like a DA, to conduct themselves in a manner meant to protect and serve all persons within the community, as their employers also expect. It is outrageous conduct for law enforcement and a DA, the people chosen to serve and protect a community, to conspire together in order to harass and destroy the life of a private person within the community. Any reasonable person would regard the conduct of Defendant Alexander in ordering law enforcement to pull Plaintiff over when sober, to harass Plaintiff when out in public, and to search Plaintiff's home based on false claims to be intolerable conduct in a civilized community. This abuse of power goes beyond the trivialities of

causing indignities, annoyances, hurt feelings, or bad manners that a reasonable person is expected to endure.

Defendant Alexander used his position as DA to turn Plaintiff's life upside down, causing Plaintiff severe emotional distress through the attacks on Plaintiff which resulted in his inability to have a successful and meaningful relationship with his minor daughters or with others in the community. This severe emotional distress was the direct result of Defendant Alexander's harassing conduct. Defendant Alexander's conduct was designed to cause Plaintiff emotional distress due to problems that existed between the parties, or in the alternative were done in reckless disregard of the severe emotional distress they would cause Plaintiff. Defendant Alexander and Plaintiff were involved in an extremely heated DA race in 2010 in which Defendant Alexander had Plaintiff's private medical condition exposed on the pages of local newspapers. Animosity already existed between the two due to Plaintiff firing Defendant Alexander when both worked at the County of Del Norte DA's office; Plaintiff was DA and Defendant Alexander was a Deputy DA.

Therefore, Plaintiff can demonstrate a probability of prevailing on the merits of his intentional infliction of emotional distress claim.

## 2. The Official Proceeding Privilege Does Not Bar Plaintiff's Intentional Infliction of Emotion Distress Cause of Action.

California Code section 47(b) provides a privilege against liability for certain communications. Section 47 states: "A privileged publication or broadcast is one made…(b) In an (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law. *Hagberg v. California Federal Bank* (2004) 32 Cal. 4th 350, 360.

Defendant uses the Court finding in *Hagberg,* which states that the official proceeding privilege is absolute, as conclusively deciding the matter of what kind of immunity Section 47 provides. However, the best indicator of what kind of immunity

Section 47 is meant to provide is the statutory language and legislative intent. There is nothing in the statutory language of Section 47 that supports the conclusion that all communications reporting criminal activity are absolutely privileged. In fact, the Legislature's criminalization of false reports in other statutes and public policy point towards there being only a qualified privilege attached to Section 47. There are several instances in which reports to police must be made in good faith for the statements to receive immunity. Among these is Penal Code section 11172(a) which states that mandated reporters are liable for knowingly making a false report. It would not seem to be consistent for the Legislature to intend mandated reports that knowingly make false statement to be liable while finding that all communications reporting criminal activity are absolutely privileged under Section 47.

Additionally, despite what the Court in *Hagberg* found, there is caselaw within California that has contradicting findings than the *Hagberg* Court. An example of such a case is *Fenelon v. Superior Court* (1990) 223 Cal. App. 3d 1475. In *Fenelon*, the Court found that communications reporting criminal activity did not concern an official proceeding and as such the communication did not receive immunity. *Id* at 1480. As applied to the present case, the communications between Defendant Alexander and law enforcement would not fall under Section 47 immunity because the communication occurred prior to any judicial or legislative proceeding. The California Supreme Court has not struck down the Court's holding in *Fenelon*.

Therefore, because the language of Section 47 and the legislature's intent does not explicitly or implicitly state that Section 47 was to provide absolute immunity to communications reporting criminal activities, and because of the Court in *Fenelon*, the Court in the present case should find the Section 47 immunity is not absolute and cannot be applied in the present case. Furthermore, the Court should deny Defendant Alexander's request to strike Plaintiff's claim for intentional infliction of emotional

distress because Plaintiff has shown a probability of prevailing on the merits and overcoming the claim of immunity.

## CONCLUSION

Plaintiff has shown that he had a probability of prevailing on the merits of his malicious prosecution and intentional infliction of emotional distress. Furthermore, Plaintiff has overcome Defendant Alexander's claims that the causes of action are barred due to immunity showing that immunity does not apply to Plaintiff's causes of action. Therefore, Plaintiff respectfully requests that the Court deny Defendant Alexander's motion to strike.

DATED: April 1, 2013                                THE CLAYPOOL LAW FIRM

                                                            /s/ Brian E. Claypool
                                                            Brian E. Claypool
                                                            Attorney for Plaintiff