1 | Steven C. Wolan (State Bar No. 56237)
Andrea S. Carlise (State Bar No. 151648)
2 | Clariza C. Garcia (State Bar No. 189918)
3 | PATTON♦WOLAN♦CARLISE, LLP
1999 Harrison Street, Suite 1350
4 | Oakland, CA  94612-3582
Telephone:  (510) 987-7500
5 | Facsimile:   (510) 987-7575
Email:  swolan@pwc-law.com;
6 | cgarcia@pwc-law.com

7 | Attorneys for Defendants
8 | COUNTY OF DEL NORTE and
RICHARD GRIFFIN

9

10 |                    UNITED STATES DISTRICT COURT

11 |                  NORTHERN DISTRICT OF CALIFORNIA

12

13 | MICHAEL RIESE, an individual,                    Case No.: CV 12-3723 WHO

14 |                    Plaintiff,                    **DECLARATION OF CLARIZA GARCIA IN
                                                      SUPPORT OF DEFENDANTS JON
15 |          vs.                                     ALEXANDER AND RICHARD GRIFFIN'S
                                                      REPLY TO OPPOSITION TO MOTION FOR
16 | COUNTY OF DEL NORTE; CRESCENT                    SANCTIONS FOR FAILURE TO PAY
CITY; CRESCENT CITY POLICE                            COURT ORDERED ATTORNEYS' FEES**
17 | DEPARTMENT; COUNTY OF DEL NORTE
SHERIFF'S DEPARTMENT; JON                             DATE:  March 5, 2014
18 | ALEXANDER; BRIAN NEWMAN;                          TIME:  2:00 p.m.
RICHARD GRIFFIN; BOB BARBER; KEITH                    DEPT:  2, 17th Floor
19 | DOYLE; DOUG PLACK, and DOES 1-10,
20 | inclusive,

21 |                    Defendants.                   Complaint Filed:  July 16, 2012

22

23 |          I, Clariza C. Garcia, declare:

24 |     1.  I am an attorney, duly authorized to practice law before all of the courts of the State of

25 | California and the Northern District of California.  I am an associate of the law firm of Patton, Wolan

26 | & Carlise, LLP, attorneys of record herein for Defendant Richard Griffin.  I make this declaration

27 |

28 | from my personal knowledge and if called to testify as a witness to the matters stated in this

declaration I could competently do so.

2.   On November 13, 2013, I appeared at the hearing on Attorney Brian Claypool's Motion to Withdraw as Counsel for Plaintiff Michael Riese.  Mr. Mordechai Pelta was present in the gallery.  I heard Plaintiff and Mr. Pelta represent to the Court that Mr. Pelta was assisting Plaintiff in obtaining new counsel.   Mr. Pelta, Plaintiff and Mr. Claypool did not inform the Court or the parties that Mr. Pelta was one of Plaintiff's attorneys and was working at Mr. Claypool's law firm.

3.   On February 6, 2014, Mr. Pelta sent me an e-mail wherein he informed me that he was "one of Plaintiff's attorneys as I have been since 2011."  Attached to this declaration as Exhibit "A" is a true and correct copy of Mr. Pelta's e-mail to me and the other parties.

4.   Mr. Pelta, as a sole practitioner, represented Plaintiff in the Government Tort Claim filed on June 1, 2012 with Del Norte County.  Attached to this declaration as Exhibit "B" is a true and correct copy of the June 1, 2012 Tort Claim.

5.   My hourly rate is $190.00.  Defendant Richard Griffin has incurred additional attorneys' fees in the amount of $1,406.00 to prepare this Reply to Plaintiff's Opposition to Motion for Sanctions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on February 27, 2014 at Oakland, California.

CLARIZA C. GARCIA

# EXHIBIT A

## Clariza Garcia

| | |
|---|---|
| **From:** | Mordechai Pelta <mpelta@bergslaw.com> |
| **Sent:** | Thursday, February 06, 2014 2:54 PM |
| **To:** | Clariza Garcia |
| **Cc:** | howard churchill; rhunt@hunt-jeppson.com; Andrea S. Carlise; Ann Asiano (AAsiano@professionals-law.com); Steven C. Wolan; jgreen@professionals-law.com; schristensen@hunt-jeppson.com; Michele Stater |
| **Subject:** | Re: Riese v. Del Norte - Response to your faxed letter |

Dear Ms. Garcia:

Your preference is noted but your firm will be dealing with me as is appropriate henceforth. Mr. Churchill and I are working the case together with Mr. Berg.

I remain one of the plaintiff's attorneys as I have been since 2011. Your insistence on deposing me builds our record for sanctions should you proceed to depose me.

You will not be deposing me. Just because Mr. Claypool without my authorization -- and specifically against my instruction -- surprisingly put down a fellow attorney as a potential witness does not give you any good faith basis to depose one of Mr. Riese's attorneys. All information I have about the case comes from my role as an attorney and investigating the facts for the client. Mr. Claypool putting me down on a disclosure was clearly incorrect and frankly a mistake. We will be seeking to have this corrected.

Mr. Churchill can speak with you February 10, 2014 at 10AM, Feb. 12, 2014 between 9AM and Noon, and Feb. 13, 2014 between 9AM and 4PM.

On Thu, Feb 6, 2014 at 2:32 PM, Clariza Garcia <cgarcia@pwc-law.com> wrote:

Mr. Pelta,


Unfortunately, tomorrow is not available for our office as the partner on this case is not available. As we stated in our letter, we request available dates for the week of February 10, 2014.


You and I never discussed dates for any of the depositions that are found in your notices. We discussed the depositions dates for you, Mr. Newman and Plaintiff. Dates that your office has yet to provide despite at least five phone calls with your office (three with you and two with Mr. Churchill). As I discussed with Mr. Churchill on February 3, 2014, if no new dates are agreed upon, Plaintiff's deposition will go forward on February 26, 2014, here at our offices. Mr. Churchill stated Mr. Riese was aware that his deposition had been noticed but he had yet to speak with Mr. Riese about a possible alternate date, and he wanted to confirm that you were indeed disclosed as a witness in Plaintiff's Initial Disclosures. However, I have not heard from him.

You will also recall that you agreed that Plaintiff will appear in Oakland if the parties stipulate to a continuance of the trial and related dates. Such a stipulation has been signed by the parties and submitted to the Court.

With regards to the depositions Plaintiff wishes to take, you only indicated a desire to depose Ms. Katherine Micks with no specific date because according to you, she is "an important source of information for the Plaintiff's case." In fact you claimed that you would not depose Sergeant Griffin, and yet you include him in your first notice. I would never have agreed to you setting the approximately 18 depositions at issue, for the very reasons set forth in our letter.

Furthermore, Mr. Hunt is not our office's "co-counsel."

Nevertheless, we are also confident that these matters can be worked out. Consistent with your request, we prefer to communicate with Mr. Churchill regarding these matters and ask when he is available next week to (1) finally resolve the matter of the three original deposition dates requested (Pelta, Newman and Riese) and (2) meet and confer regarding Plaintiff's two deposition notices addressed in my letter dated February 6, 2014.

Sincerely,

Clariza Garcia

Clariza C. Garcia

**Patton ♦ Wolan ♦ Carlise** LLP

Lake Merritt Plaza

1999 Harrison, Suite 1350

Oakland, CA  94612-3582

Tel:  510-987-7500, ext. 7521

Dir:  510-588-7521

Fax: 510-987-7575

Email:  cgarcia@pwc-law.com

www.pwc-law.com

2

*This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately and delete this copy from your system.*

**From:** Mordechai Pelta [mailto:mpelta@bergslaw.com]
**Sent:** Thursday, February 06, 2014 1:59 PM
**To:** Clariza Garcia
**Cc:** howard churchill; rhunt@hunt-jeppson.com
**Subject:** Riese v. Del Norte - Response to your faxed letter


Dear Ms. Garcia:


Mr. Churchill reviewed your faxed letter you cc'ed to your co-counsel at Hunt & Jeppson dated today concerning the deposition notice.


There was no failure to meet and confer.  In fact, I spoke with you last week two times about depositions we planned to have then have at least one email on the topic to you.

You even discussed it with Mr. Churchill.  Your comments describing no meeting and conferring on the subject are therefore perplexing to us.


However, we would still like to address all of the issues with you or your firm tomorrow by phone.  Can we say around Noon?


Please let us know what time works for your firm to discuss the issues you raised because I am confident we can work this out.


Sincerely,


--

**Mordechai "Marc" Pelta**

**Berg & Associates**

3

**5000 Bechelli Lane**

**Redding, CA 96602**

**(530)223-5100**

This email and accompanying documents are covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521.  The information contained here is confidential and may be protected by the attorney-client privilege and Evid. Code §§952, 953, Probate Code §12252, and other statutes.  The information is intended only for the use of the individual or entity to which it is addressed.  If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited.  If you received this communication in error, please notify this office immediately by replying to this message and then delete it from your computer.  This communication is not intended to be used, and it cannot be used, for the purpose of avoiding tax liabilities and/or penalties that may be imposed on the taxpayer or for any other illegal purpose.

--

**Mordechai "Marc" Pelta**
**Berg & Associates**
**5000 Bechelli Lane**
**Redding, CA 96602**
**(530)223-5100**

This email and accompanying documents are covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521.  The information contained here is confidential and may be protected by the attorney-client privilege and Evid. Code §§952, 953, Probate Code §12252, and other statutes.  The information is intended only for the use of the individual or entity to which it is addressed.  If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited.  If you received this communication in error, please notify this office immediately by replying to this message and then delete it from your computer.  This communication is not intended to be used, and it cannot be used, for the purpose of avoiding tax liabilities and/or penalties that may be imposed on the taxpayer or for any other illegal purpose.

4

# EXHIBIT B

1   Mordechai Pelta, SBN 253315
    Pelta Law
2   236 West Portal Avenue, #160
    San Francisco, CA 94127
3   Phone: (415)963-1152

4

5                 NOTICE OF CLAIM AGAINST PUBLIC ENTITY

6                      AND/OR PUBLIC EMPLOYEES

7                       [GOV'T CODE 810 – 996.6]

8

9   1. **CLAIMANT'S NAME:**  Michael D. Riese

10  2. **LOCATION TO SEND NOTICES:**  Mordechai Pelta, SBN 253315, Pelta Law

11  236 West Portal Avenue, #160, San Francisco, CA 94127, Phone: (415)963-1152

12  3. **DATE OF DAMAGE AND/OR INJURY:** October 31, 2011 – June 1, 2012.

13  4. **LOCATION OF DAMAGE/INJURY:** Del Norte County, California, including but not
14  limited to the Courthouse at 450 H Street, Crescent City, CA 95531, 131 Olivine Way, Crescent
    City, CA 95531, and other relevant sites within the County.

15  5. **AMOUNT OF CLAIM:**  In excess of $25,000.

16  6. **JURISDICTION:**  Federal and/or Superior Court.

17  7. **CIRCUMSTANCES THAT LED TO DAMAGES CLAIMED WITH NAMES OF THE
18  PUBLIC AGENCIES AND/OR EMPLOYEES, IF KNOWN, WHO CAUSED SAID
    DAMAGES TO CLAIMANT:**

19       Michael Riese (Mr. Riese) is the former two-term elected District Attorney of Del

20  Norte County who was defeated in a June 2010 election primary as strategized by the erstwhile,

21  present District Attorney, Jon Alexander (Alexander) who is being prosecuted by the State Bar

22  for violations for unethical conduct and he is being investigated by the FBI for violating federal

23

24  law. **See Exhibit A.**

25       From the time Mr. Riese fired Alexander as a Deputy District Attorney in June 2005 after

26  a mere 5 months on the job by determining he was not longer able to remain employed as such

27  while being in probation, Alexander has mounted numerous false ad hominem attacks against

28

                                   1

1   Mr. Riese, culminating in the February 2012 acquittal that resulted in an Alexander-led effort to

2   criminally prosecute Mr. Riese and quite unsuccessfully. **See Exhibit B.**

3       The personal attacks by Alexander that are ongoing through the present date because of

4   Alexander's unrelenting campaign to defame and ruin Mr. Riese as much as Alexander can, in

5   any way he can – including brazenly abusing his intoxicating, newfound authority as the

6   erstwhile DA of Del Norte County –  started during the 2006 District Attorney election, seemed

7   to wane over time and then emerged in a stark, vicious and personal manner unlike any seen in

8   the County's history during the 2010 DA election campaign; when Alexander made it even more

9   personal against Mr. Riese with unrelenting attacks both verbally and in written form that

10  continue unabated.  It was later learned that Alexander had a key role in distributing from Mr.

11  Riese's leaked personnel file an unsubstantiated accusation of using drugs in the workplace

12  written to him in September 2009 by the former CAO for the County, Jeanine Galatioto.  It was

13  released at the filing deadline for the DA election campaign.

14

15       This personal campaign with the benefit of hindsight took many forms, one of its most

16  sinister – although not to be outdone by another soon to follow, was the making of an unusually

17  large number of so-called anonymous calls to Del Norte County Sheriff's Office dispatch center

18  alleging Mr. Riese was driving erratically or under the influence.  These calls were, in fact, not

19  anonymous because they can be traced back to the caller either by voice (because the County is

20  small and the dispatch personnel recognize Alexander's voice or that of his retinue of consistent

21  callers) or by phone number.  The calls even come in when Mr. Riese is not in town.

22       Alexander tried to have Mr. Riese and his friends Mordechai Pelta and Scott Feller

23  falsely criminally prosecuted for allegedly stealing DA-office equipment that Alexander falsely

24  claimed was stolen when Mr. Riese moved out in early January 2011 from the DA's Office.

25  Alexander expended DA office resources by using his own staff to investigate his personally

26

27

28

2

1  motivated delusion against Mr. Riese and his friends.  Alexander falsely claimed that Pelta and

2  Feller assisted Mr. Riese in stealing a safe that was in the DA's Office.  The safe was given to

3  Mr. Riese by former DA Bill Cornell and was given by Mr. Riese to the Sheriff's Office. The

4  fact was that Pelta did not move the safe.  He had four spinal operations by that date and could

5  not even assist in moving such an object even if he had wanted to.  And there was no proof he

6  assisted in moving it because it does not exist except in Alexander's imagination.  Nevertheless,

7  Alexander persisted in his delusion of trying to get Mr. Riese and his friends: Pelta and Feller for

8

9  crimes that they did not commit.  Alexander even accused Mr. Riese of stealing some wooden in

10  and out boxes for the desk in Alexander's office, a desk previously used by Mr. Riese.  The

11  value of said boxes was about $20 each and there were two of them.  That accusation also went

12  unsubstantiated to date.  But the expenditure of DA resources in this delusion of Alexander's sets

13  the stage for the subsequent egregious conduct described here that is ongoing and unrelenting in

14

15  a campaign to harass Mr. Riese into leaving the County where he has lived for more than 20

16  years.

17        The more sinister form of this campaign evolved into a criminal prosecution in Del Norte

18  County Superior Court Case Number CRTR11-3585 that was filed on or about in Court by DA

19  office staff on October 31, 2011.  Mr. Riese was falsely charged with driving under the influence

20  of a drug or drugs, child endangerment and public intoxication.  See Exhibit C.  The charges

21  were false because they lacked a basis in fact to the point that they even lacked probable cause to

22

23  arrest him which is why the Crescent City Police Officers Justin Gill and Yeng Lo deemed it a

24  medical issue and not a criminal one that night at Safeway in Crescent City on August 22, 2010

25  when Mr. Riese was in medical distress after shopping at the location for about an hour and a

26  half. See Exhibit C.

27        During the trial, the following equally nefarious details emerged:

28

3

NOTICE OF CLAIM AGAINST PUBLIC ENTITY AND/OR PUBLIC EMPLOYEES

1.    Alexander made a secret agreement between him, Deputy Attorney Brian Newman, Detective Keith Doyle (Doyle) of the CCPD, and Mr. Riese's ex-wife, Stephanie Riese a/k/a Stephanie Riese-Jacobs that in exchange for not prosecuting her for at least 6 violations of California law by refusing toe turn over the two minor daughters she has with Mr. Riese between October 2011 and February 2012 that she would provide favorable, tailored testimony for the prosecution against Mr. Riese at the trial in said criminal case. But for Mr. Cochran's cross-examination skills, this secret agreement would have remained suppressed from the Court and the jury in said case.

2.    Deputy District Attorney Lisa Specchio instructed local law enforcement based upon the wished of Alexander to not arrest or prosecute Stephanie Riese for her intentional violation of the lawful custody order of her minor children with Mr. Riese between November 2011 and February 2012. Said instructions have not been rescinded as far as Mr. Riese knows.

3.    The sole occasion that the County's Sheriff's Office chose to enforce the lawful custody order was on November 18, 2011 when Mr. Riese went with Deputy Sheriff Enrique Ortega to a location in Crescent City where Stephanie Riese was told by Ortega either she comply with the court order or be arrested forthwith. She decided to comply on only that occasion between October 2011 and February 2012. After that event, the Sheriff's Office refused to respond to Mr. Riese's pleas for help to enforce the custody order and kissed it off to the CCPD, which also did not enforce the custody order because of the DA's Office's instruction via DDA Specchio. **See Exhibit K.**

4

4.   There was approximately 100 minutes of exculpatory and exonerating video footage that conveniently went missing after Alexander was the first person on the scene and obtained said original video footage – that Safeway did not retain a duplicate copy of – after Officers Lo and Gill determined Mr. Riese could go to the hospital because there was <u>no probable cause</u> to arrest for any crime. The missing video was reviewed by Safeway employees and it showed Mr. Riese "stone cold sober" for about the first 100 minutes till he went into medical distress. This <u>exculpatory, exonerating evidence was suppressed from the jury</u> and the Court for the pendency of the prosecution for said case. Mr. Riese's defense team comprising Mr. Cochran and Mr. Pelta discovered this from the police reports and conversations with Safeway employees including by not limited to store manager Brian Ridgely, among others.

5.   Alexander was the motivating factor in the prosecution of said case against Mr. Riese.

6.   Alexander met on a weekly basis with DAG Newman per Assistant DA Katherine Micks. **See Exhibit D.**

7.   Alexander met with Chief Plack and Det. Doyle to ensure prosecution of Mr. Riese.

8.   Alexander made it clear that if the Attorney General did not prosecute Mr. Riese that he would do it himself despite there being a conflict of interest. **See Exhibit E.**

9.   Alexander's role in the case in and of itself amounted to misleading the Court because many statements by DAG Newman were made to the Court (i.e. Hon. Judge Anthony Edwards) acknowledging that there was a conflict of interest

5

1    and that Alexander had and would have nothing to do with the case.  This was

2    a lie. **See Exhibit D.**

3        During the trial, Mr. Riese uncovered for the jury that Doyle and Stephanie Riese

4    concocted a scheme to have as many people she could get call into 911 whenever Mr. Riese was

5    seen driving in Del Norte in order to force him into drug rehabilitation.  This was hidden from

6    the jury and Judge on direct examination till Mr. Riese brought it out from cross-examining

7    Doyle based upon a transcript he provided of a conversation he had with Stephanie Riese. **See**

8

9    **Exhibit F.**  They agreed that it would take a conviction to force Mr. Riese into rehabilitation and

10   it appears from what occurred that this would be done at any cost, even a false conviction. Id.

11       Fortunately, notwithstanding Mr. Riese's legal fees from Mr. Cochran at approximately

12   $12,000, the jury delivered justice on February 15, 2012 at the conclusion of the trial that lasted

13   since February 7, 2012 and acquitted Mr. Riese on all four counts!  But the irreparable and

14   severe harm to Mr. Riese's emotional state, reputation, financial well being, and his family

15   relationships, his business with his mother Carol Riese where they contract with the State of

16   California to care for mentally impaired adults, and more, were all shattered by the humiliation

17   of this false prosecution.  As a result, the State of California forbids Mr. Riese from having

18   access to the property where his mother lives and cares for said adults.  His law practice, the Del

19   Norte Law Firm basically earned almost no more income anymore since the publicized (through

20   no less than Alexander and his retinue) incident at Safeway of August 22, 2011 and he had to let

21   his only staff assistant go because of the precipitous loss of income as a direct result of the

22   prosecution that had the invisible, guiding hand of Alexander behind it from its inception.

23       Mr. Riese has been illegally detained on no less than 10 occasions between August 2011

24   and April 2012 for allegedly DUI.  In full view of the public, he was humiliated by being

25   administered Field Sobriety Tests by law enforcement officers from the Sheriff's Office, CCPD

26

27

28

6

1    and the California Highway Patrol, which all except one result in NO ARREST (or prosecution)

2    because Mr. Riese was sober.  It is anticipated that the very last FST will also prove that

3    Alexander was behind it and was incorrectly administered.  The arrest was illegal.  However,

4    Alexander's obsessive campaign to get Mr. Riese at any cost simply does not stop.  It was

5    recently discovered by Mr. Riese within the last 3 days, that Alexander stated to Mr. Riese's

6    attorney, Marilyn Mullem, that if he would just go to drug rehab that all of his legal problems

7    would go away.

8

9            On December 3, 2011, when Mr. Riese was shopping at Walmart, he was detained and

10   falsely accused of both shoplifting and DUI.  This was calculated, malicious, humiliating and

11   continued to ruin Mr. Riese's reputation in the County, which affected his emotional well being

12   and his professional reputation to obtain clients in addition to his family and personal

13   relationships.  Alexander was at the scene.  Alexander ordered law enforcement officer to arrest

14   Mr. Riese.  They refused to arrest Mr. Riese.  And it was proven Mr. Riese shoplifted nothing!

15   Another false accusation generated by the one and only, erstwhile DA Jon Alexander.  **See**

16

17   **Exhibit G.**

18            Alexander has been on a malicious campaign of trading information with the local tabloid

19   known as the Del Norte Triplicate, including by not limited to e-mails, phone calls and weekly

20   meetings between him and editor Richard Wiens and Supervisor Martha McClure.  For example,

21   in the criminal case that Mr. Riese was recently acquitted, Alexander released to the Triplicate

22   information about the impending charges before they were even filed in Court.  He has done the

23   same thing by monitoring County Dispatch with a radio device, i.e. a scanner, to listen for such

24   reports so he can assist in embarrassing, humiliating and harassing Mr. Riese. **See Exhibits B, E**

25

26   **& H.**

27

28

NOTICE OF CLAIM AGAINST PUBLIC ENTITY AND/OR PUBLIC EMPLOYEES

Between April 25 and 29, 2012, the Sheriff's Office came to Mr. Riese's home two times in the form of Sergeants Dubreuil and McManus based upon complaints of excessive noise during the day. There was an attempt to illegally detain Mr. Riese in his home and it failed. No such noise occurred. These were false complaints. This is part of a campaign to harass Mr. Riese into leaving Del Norte.

On December 21, 2011, Deputy Richard Griffin (Griffin) and other peace officers of the Del Norte County Sheriff's Office executed a search warrant on Mr. Riese's home at 131 Olivine Way, Crescent City in Del Norte County California that violated Mr. Riese's civil rights, including but not limited to his 4th Amendment rights under the United States Constitution. **See Exhibit I.**

However, <u>the affidavit of probable cause includes false statements that Griffin, the affiant, made regarding Mr. Riese, including, but not limited to</u>:

1. All "common knowledge" statements in the affidavit.

2. Claimed Tess Abad a/k./a Teresita Michelletti, Mr. Riese's girlfriend, worked for Dr. Donald Michelletti. In fact, she had not worked for him for approximately 10 years, but that is nowhere in the affidavit and lends itself to what is called stale information and is often the basis for denying search warrants by the neutral, issuing magistrate, Hon. Judge Cissna.

3. There was no investigation of Mr. Riese's relationship with Ms. Abad to substantiate any statement upon which the affiant, Griffin, swore to the issuing magistrate, Hon. Judge Cissna.

4. There was no investigation by the affiant, Griffin, how Mr. Riese could have obtained a prescription pad or form from Dr. Michelletti. It was all pure speculation, hidden from the Hon. Judge Cissna.

5. The affiant, Griffin, contrived the warrant with detective Bob Barber, Alexander and DAG Newman in order to go on a fishing expedition to intentionally exceed the scope of the warrant with premeditation in Mr. Riese's homes for firearms they sought. The firearms were the motivating factor behind the warrant as can be concluded by the length of time they spent searching for the firearms, the questions the officers asked Mr. Riese, the amount of time they spent operating Mr. Riese's firearms, the insistence they made in targeting Mr. Riese's gun safe and its contents from the inception of the search. There is no mention on the warrant that the firearms were a subject of the search. Hence, the affiant, Griffin, lied to the issuing magistrate in order to gain entry into Mr. Riese's home in the hope he would find illegal firearms in the home, which were never found.

6. The officers seized only one firearm, a 1911, .45 caliber pistol that was loaned to him by Sheriff Dean Wilson since late 2007 that was legally possessed by Mr. Riese. Mr. Riese possessed it because he was abiding by the terms of the loan thru that date of the search. The firearm was seized notwithstanding that Mr. Riese did not even allegedly violate the terms of the loan. Alexander, Griffin and Newman all sought to have Mr. Riese charged for possessing the pistol as stolen. Fortunately, Sheriff Wilson saw that this injustice did not occur. **See Exhibit J.**

Claimant seeks fair compensation from Del Norte County for all damages he sustained as a result of all negative statements and actions by its employees and officials including but not limited to: DA Jon Alexander, Dep. Griffin, Sgt. Morris, Det. Barber, and any and other unknown officials and employees who participated in these violations of law or knew of its knowledge, and stood silently by, in addition to all actions by said employees and officials made in connection with this event as described above, but not limited to all out of pocket expenses and damages, lost wages – present and future, lost insurance benefits, lost retirement benefits,

NOTICE OF CLAIM AGAINST PUBLIC ENTITY AND/OR PUBLIC EMPLOYEES

1    and attorney's fees.  Said damages include but are not limited to causing Mr. Riese and his

2    family including but not limited to his minor daughters' severe emotional harm, ruining Mr.

3    Riese's law practice, seeking to ruin his personal relationships, his business with his mother and

4    to harass him into leaving Del Norte County where he has lived for more than two decades.

5

6    Dated: June 1, 2012                                 By: _____

7                                                        Mordechai Pelta,
                                                         Attorney for Claimant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

## PROOF OF SERVICE

I, Michele L. Stater, declare:

I am employed in the County of Alameda, California. I am over the age of 18 years and not a party to the within-entitled cause; my business address is the law firm of PATTON ♦ WOLAN ♦ CARLISE LLP, located at 1999 Harrison Street, Suite 1350, Oakland, California 94612. On February 27, 2014, I caused to be served on the following parties:

**DECLARATION OF CLARIZA GARCIA IN SUPPORT OF DEFENDANTS JON ALEXANDER AND RICHARD GRIFFIN'S REPLY TO OPPOSITION TO MOTION FOR SANCTIONS FOR FAILURE TO PAY COURT ORDERED ATTORNEY'S FEES**

_____   **(by mail)** on all parties in said action, in accordance with C.C.P.§1013, by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below. At PATTON ♦ WOLAN ♦ CARLISE LLP, mail placed in that designated area is given the correct amount of postage and is deposited that same day, in the ordinary course of business, in a United States mailbox in the City of Oakland, California.

__XX__   **(by overnight delivery)** I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) at the address(es) below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

_____   **(by personal delivery)** by causing to be personally delivered (via a messenger service) a true copy thereof to the person and at the address set forth below.

_____   **(by facsimile transmission)** by transmitting said document(s) from our office facsimile machine (510) 987-7575, to the facsimile machine number(s) shown below. Following transmission, I received a "Transmission Report" from our fax machine indicating that the transmission had been transmitted without error.

**Attorney for Plaintiff Michael Riese:**

Eric Alan Berg
Howard Churchill
Mordechai Pelta
BERG & ASSOCIATES
5000 Bechelli Lane, Suite 201
Redding, CA 96002
Tel:  650-223-5100
Fax: 650-223-5200
Email: eric@bergslaw.com
Email: info@bergslaw.com
Email: hchurchill@bergslaw.com
Email: mpelta@bergslaw.com

1

## PROOF OF SERVICE

1

2     I declare under penalty of perjury that the foregoing is true and correct under the laws of

3 the United States of America and that this Declaration was executed on February 27, 2014 at

4 Oakland, California.

5                               Michele L. Stater

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2