1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10

11  MICHAEL RIESE,                        Case No.  12-cv-03723-WHO

                    Plaintiff,
12
                                          **ORDER GRANTING DEFENDANTS'**
13         v.                             **MOTIONS FOR SUMMARY**
                                          **JUDGMENT**
14  COUNTY OF DEL NORTE, et al.,
                                          Re: Dkt. Nos. 139, 140, 141, 142, 143, 144
    Defendants.
15

16

17                          **INTRODUCTION**

18         Plaintiff Michael Riese sued the defendant law enforcement officers and agencies for

19  various torts and civil rights violations.  All remaining defendants have moved for summary

20  judgment on all remaining causes of action. [1] Riese has wholly failed to identify specific facts

21  showing a genuine issue for trial.  The defendants' motions for summary judgment are

22  GRANTED.

23

24

25  _____

26  [1] On September 3, 2011, I granted anti-SLAPP motions to strike Riese's causes of action for
    malicious prosecution under California law and intentional infliction of emotional distress against
27  defendant Jon Alexander and Riese's cause of action for intentional infliction of emotional distress
    against defendant Richard Griffin.  *See* Dkt. No. 78.  Riese voluntarily dismissed defendants Brian
28  Newman and Bob Barber on April 1, 2014.  *See* Dkt. No. 117.

United States District Court
Northern District of California

**BACKGROUND**

This matter arises out of a series of run-ins between Riese, the former elected District Attorney of Del Norte County, and defendants, various law enforcement officers and agencies, including Jon Alexander, who succeeded Riese as the elected District Attorney in 2010. The evidently antagonistic relationship between Riese and Alexander is at the root of Riese's allegations.

Alexander became a Deputy District Attorney in Del Norte County in January 2005. Alexander Decl. ¶ 1. Riese was the elected District Attorney at the time. *Id*. Alexander was terminated from his employment as Deputy District Attorney in May 2005. Alexander Decl. ¶ 1. Riese alleges that he fired Alexander from his position "after determining that Alexander could no longer be employed as a Deputy DA while on probation." Compl. ¶ 22 [Dkt. No. 1]. In June 2010, Alexander defeated Riese in an election and succeeded him as District Attorney.[2] Alexander Decl. ¶ 1.

Two episodes are central to the motions before me: Riese's arrest and subsequent prosecution for DUI, child endangerment, and public intoxication, arising from his conduct at a Safeway in Crescent City on August 22, 2011; and the issuance of a search warrant and subsequent search of Riese's home in December 2011. Based on these two episodes, Riese alleges causes of action for (i) unreasonable search and seizure; (ii) malicious prosecution under 42 U.S.C. Section 1983[3]; (iii) fabrication of evidence; (iv) conspiracy to interfere with civil rights; (v) supervisory liability for constitutional violations; (vi) municipal liability for unconstitutional custom or policy; (vii) intentional infliction of emotional distress.

**I.     THE SAFEWAY INCIDENT**

Around 8 p.m. on August 22, 2011, Crescent City Police officers Lo and Gill responded to

---

[2] Alexander is currently involuntarily enrolled as an inactive member of the State Bar pending the California Supreme Court's decision on the State Bar Court's recommendation to disbar him for misconduct unrelated to this case. *See http://members.calbar.ca.gov/fal/Member/Detail/129207*

[3] Riese also alleged a cause of action for malicious prosecution under California common law (seventh cause of action). That cause of action was stricken by my order granting in part Alexander's anti-SLAPP motion. *See* Dkt. No. 78.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    a 911 call from Safeway to check on Riese.  *See* Doyle Decl. Ex. A, Doyle investigative report

2    [Dkt. No. 140-2].  A Safeway employee told the officers that Riese appeared confused and

3    disoriented and "had difficulty standing in place and was unable to slide his credit card through the

4    card machine."

5         Riese told the officers that he was taking prescription medication for a knee injury.  *Id*.  He

6    also stated that he had not slept for several days.  *Id*.  According to two Safeway employees, Riese

7    initially told the officers that he had driven to the Safeway, but subsequently stated that he had

8    walked there and that his girlfriend was picking him up.  *Id*.  Officer Gill observed Riese's pickup

9    truck in the Safeway parking lot.  *Id*.  The officers reported that Riese believed that it was around

10   5:00 p.m., not 8:00 p.m.  *Id*.  Riese was not able to find his cell phone, so Officer Lo let Riese use

11   his phone to contact Riese's girlfriend.  *Id*.  Riese was not able to operate the cell-phone, so

12   Officer Lo contacted the girlfriend for Riese.  *Id*.  She arrived a few minutes later and Riese was

13   released to her care.  *Id*.

14        The following day, August 23, 2011, Alexander went to the Safeway to purchase pet food.

15   Green Decl, Ex. 13, Alexander Depo. 52:25-53:3.  The Safeway checker told Alexander about the

16   incident involving Riese the day before.  After leaving Safeway, Alexander went to Chief Plack's

17   home because Alexander "believed a crime had been committed and wanted to know Chief

18   Plack's knowledge of the incident."  Alexander Decl. ¶ 12.  Alexander told Plack that he "would

19   like a senior detective to conduct a thorough investigation of the Safeway Incident."  *Id*.  Around

20   August 24, 2011, Alexander went to the Safeway and met with Safeway manager Brian Ridgley.

21   Alexander requested a copy of all the footage from Safeway's surveillance cameras which showed

22   Riese at Safeway on August 22, 2011.  Ridgley provided Alexander a disc with the footage.

23   Alexander states that he provided the disc to the Crescent City Police Department "shortly" after

24   receiving it.  Alexander Decl. ¶ 13.

25        In late August 2011, Brian Newman, a Deputy Attorney General with the California

26   Department of Justice, became responsible for the criminal prosecution of Riese arising out of

27   Riese's conduct at the Safeway.  Alexander Decl. ¶ 16; Newman Decl. ¶ 7 and ¶ 1 [Dkt. No. 144-

28   12].  In 2011 and 2012, Newman primarily handled conflict cases referred from the Del Norte

United States District Court
Northern District of California

1    County District Attorney due to conflicts arising from District Attorney Alexander's prior position

2    as a criminal defense attorney in Del Norte County.  Newman Decl. ¶ 3.

3             On August 25, 2011, defendant Crescent City Police Chief Plack assigned defendant

4    Detective Doyle to investigate the incident.  Plack and Doyle "determined that Detective Doyle

5    should not report to Jon Alexander about the Safeway Incident, but that instead he should report

6    directly to Brian Newman."  Plack Decl. ¶ 12; Doyle Decl. ¶ 5.  Doyle went to the Safeway that

7    same day and met with Safeway assistant manager Irene Durigan.  Durigan showed Doyle

8    surveillance footage of Riese in the Safeway.  According to Doyle's report, Riese "appeared to be

9    extremely under the influence."[4]  Doyle Decl. Ex. A (Doyle investigative report at 6).  Doyle

10   interviewed several witnesses to the incident over the following several weeks.  *Id.* at 7, *et seq.*

11   Those interviews suggested that Riese had been impaired earlier that day while driving with his

12   two daughters, and that he had driven to the Safeway after his ex-wife retrieved the children.

13            After Doyle completed his investigation of the Safeway incident, he hand delivered his

14   investigative report to Newman.  Doyle Decl. ¶ 18.  Newman confirms that he received Detective

15   Doyle's completed investigation in late September 2011.  Newman Decl.  ¶ 8.  Doyle also

16   delivered the report to Alexander in late September 2011.[5]  Alexander Decl. ¶ 17, Ex. 102.

17   Alexander summarized the report and forwarded it to a senior attorney in the California Attorney

18   General's office (not Newman) "because the Attorney General's office handled the investigation

19   and prosecution" of the Safeway incident.  *Id.*  Alexander's "summary" included the following

20   statements:

21                   At this time, I am requesting the Office of the Attorney General to
22            pursue the prosecution of Mr. Riese. Although I know I and my

---

23   [4] Doyle's report is discussed in more detail below.

24   [5] Alexander contends that Doyle's report was delivered to Alexander "by mistake."  Alexander
     motion for summary judgment at 6.  But paragraph 17 of the Alexander Declaration, which
25   Alexander cites in support of this contention, merely states that Alexander "received a packet
     containing Detective Doyle's completed investigation" in September 2011; it does not state that
26   this was an accident.  Alexander Decl. ¶ 17.  Moreover, the "summary" of Doyle's report which
     Alexander prepared for the Attorney General's office states that "Det. Doyle completed the
27   investigation packet *and delivered it to me yesterday afternoon*."  Alexander Decl. ¶ 17, Ex. 102
28   (emphasis added).  Doyle's declaration does not address the delivery of his report to Alexander.

4

United States District Court
Northern District of California

Office can prosecute the case without bias or prejudice, my previous history with Mr. Riese will be assailed as vendetta driven politics and I wish to not subject my office to such attack.

(…)

Please keep me apprised of your decision(s) in this matter. It is of extreme importance to the many citizens of our County who are inquiring each day.

Alexander Decl. ¶ 17, Ex. 102.

Newman reviewed Doyle's report and determined that there was sufficient evidence to charge Riese with DUI, child endangerment, and public intoxication, arising from the Safeway incident.  Newman Decl. ¶ 8 and Ex. 1 (criminal complaint against Riese).  Newman claims that he "made the decision to charge Michael Riese independently of Jon Alexander or any other member of the Del Norte County District Attorney's Office" and that "Alexander did not assist, supervise, direct, or otherwise influence [Newman's] investigation and prosecution of Michael Riese in this case."  Newman Decl. ¶¶ 8, 11.  Newman's decision to charge Riese was reviewed by his superiors at the California Department of Justice.  He received approval to file charges against Riese on October 26, 2011.  Newman Decl. ¶ 9.

On October 31, 2011, Riese was mailed a letter on Alexander's Del Norte District Attorney letterhead advising him that a criminal complaint had been filed against him for DUI, child endangerment, and public intoxication.  Newman Decl., Ex. 2.  The letter was purportedly from Alexander and bore Alexander's signature.  Newman claims that he directed the Del Norte District Attorney's Office to send the letter and that the letter was "sent on standard Del Norte District Attorney's Office letterhead and a stamp bearing Jon Alexander's signature was used."  Newman Decl. ¶ 17.  Alexander claims that his office used his stamped signature without consulting him and that he did not direct anyone to prepare or send the letter.  Alexander Decl. ¶ 19.

Riese alleges that he was tried in February 2012 for DUI, Child Endangerment, and Public Intoxication  and that he was found not guilty on all counts. [6]  Compl. ¶ 32.  Newman was the

_____

[6] The parties have cited no competent evidence establishing that Riese was tried and acquitted, but the parties' pleading and briefing assumes that that is the case.  I assume likewise.

1    prosecuting attorney at trial.  Newman Decl. ¶ 11.

2    **II.     THE SEARCH OF RIESE'S HOME**

3          Around December 12, 2011, Officer McCourt from the Brookings Police Department

4    advised defendant Del Norte County Sheriff's Deputy Richard Griffin that Riese had been cited on

5    December 12, 2011 for passing a forged prescription for Fentanyl at a pharmacy in Brookings,

6    Oregon.  Griffin Decl. ¶ 3.  On December 21, 2011, Griffin prepared an affidavit in support of a

7    search warrant for Riese's home.  Riese alleges that Griffin submitted the affidavit with false

8    allegations because it stated that it was "common knowledge" that Riese's girlfriend worked in a

9    doctor's office and had access to prescription pads, when in fact Riese's girlfriend had not worked

10   for the doctor for 10 years.  Compl. ¶ 29.

11         The search warrant was issued on December 21, 2011.  On December 21, 2011, Griffin,

12   along with other Del Norte County Sheriff's Deputies and Brookings Police Officers, conducted a

13   search of Riese's home.  Griffin Decl. ¶ 5.

14         Riese alleges that Griffin and other Del Norte County Sheriff's Deputies, "all heavily

15   armed, broke into Riese's home without first knocking and announcing themselves."  Compl. ¶ 30.

16   Riese alleges that the deputies spent five hours "focusing on Riese's firearms collection and in

17   taking pictures of them."  *Id*.  Riese asserts that the "illegal search exceeded the scope of the

18   warrant" and did not result in Riese's arrest or in criminal charges being filed against him.  *Id*.

19         During the search of Riese's home, one of the officers found a receipt from a pharmacy in

20   Brookings, Oregon, showing that Riese filled a prescription for Fentanyl on December 7, 2011.

21   *Id*. ¶ 6.  Officer McCourt subsequently told Griffin that the December 7, 2011 prescription was a

22   forgery.  *Id*. ¶ 7.

23                                  **LEGAL STANDARD**

24         Summary judgment is proper "if the movant shows that there is no genuine dispute as to

25   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

26   The moving party bears the initial burden of demonstrating the absence of a genuine issue of

27   material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however,

28   has no burden to disprove matters on which the non-moving party will have the burden of proof at

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1    trial.  The moving party need only demonstrate to the court "that there is an absence of evidence to

2    support the nonmoving party's case."  *Id*. at 325.

3           Once the moving party has met its burden, the burden shifts to the non-moving party to

4    "designate specific facts showing a genuine issue for trial." *Id*. at 324 (quotation marks omitted).

5    To carry this burden, the non-moving party must "do more than simply show that there is some

6    metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*.,

7    475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient;

8    there must be evidence on which the jury could reasonably find for the [non-moving party]."

9    *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

10          In deciding a summary judgment motion, the court must view the evidence in the light

11   most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Id*. at 255.

12   "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

13   inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for

14   summary judgment."  *Id*.  However, conclusory or speculative testimony in affidavits is

15   insufficient to raise genuine issues of fact and defeat summary judgment.  *See Thornhill Publ'g

16   Co. v. GTE Corp*., 594 F.2d 730, 738 (9th Cir. 1979).

17          A district court need not consider evidence in the record "unless it is brought to the district

18   court's attention" because the court is "not required to comb the record to find some reason" to

19   grant or deny summary judgment; rather, "if a party wishes the court to consider [evidence for a

20   particular issue], the party should bring that desire to the attention of the court." *Carmen v. S.F.

21   Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citation and internal punctuation

22   omitted); *see also Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (stating that the court is not

23   obligated "to scour the record in search of a genuine issue of triable fact").

## DISCUSSION

24

25          As the plaintiff, Riese bears the burden of proof on his allegations.  Consequently, at

26   summary judgment, the defendants need only demonstrate that there is an absence of evidence to

27   support Riese's case. *Celotex*, 477 U.S. at 325.  They have done so.  The burden therefore shifts to

28   Riese to "designate specific facts showing a genuine issue for trial." *Id*. at 324 (quotation marks

United States District Court
Northern District of California

1  omitted).  He has failed to do so.  Rather, in opposition to the defendants' motions for summary

2  judgment, Riese has submitted a jumble of conclusory allegations, unsupported assertions,

3  confusing and incomplete cross-references to other opposition briefs,[7] and cites to existing and

4  non-existent declarations (perhaps tellingly, with the pincites left blank).[8]  In addition, Riese has

5  seemingly abandoned his claims against defendants Plack and Doyle as his opposition briefs do

6  not even address the allegations against them.  Riese's failure to cite evidence in support of his

7  allegations is sufficient basis to grant Alexander's motion for summary judgment.  *See, e.g.,*

8  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district

9  court need not examine the entire file for evidence establishing a genuine issue of fact, where the

10  evidence is not set forth in the opposing papers with adequate references so that it could

11  conveniently be found.").  Nonetheless, I have examined all of the material submitted by Riese in

12  an effort to determine whether he has presented evidence creating questions of fact.  He has not.

13  The defendants' motions for summary judgment are GRANTED.

14  **I.**     **FIRST CAUSE OF ACTION: UNREASONABLE SEARCH AND SEIZURE**
          **UNDER 42 U.S.C. § 1983 (DEFENDANT GRIFFIN)**

15

16         Riese alleges that Griffin "caused Plaintiff Riese to have his home and possessions

17  ransacked and searched with an improperly issued search warrant" and that Griffin, "in bad faith,

18  submitted a probable cause affidavit to the issuing magistrate judge that included false

19  allegations."  Compl. ¶ 34.  Riese also alleges that Griffin "ignored the purpose of the search

20  warrant, to find evidence of illegal narcotics, and instead spent the majority of their time searching

21  through Plaintiff's legally possessed firearm collection and harassing Plaintiff about his

22  _____

23  [7] For example, Riese's joint opposition to Crescent City's, Doyle's and Plack's motions for
   summary judgment states, "For further specifics, see Plaintiff's Arguments and Points and

24  Authorities in Opposition to Motions for Summary Judgment filed by Defendants County of Del
   Norte and Richard Griffin, pages _____ to _____."  Opp. at 7 (blank citations in original).  This

25  cross-reference was not necessitated by space constraints as the opposition brief was only 11 pages
   long, leaving 14 pages for additional discussion.

26  [8] For example, Riese's joint opposition to Crescent City's, Doyle's and Plack's motions for

27  summary judgment includes the following citation: "Declaration of Orien Nelson, page ___, lines
   ___, and Exhibit ___ attached thereto." Opp. at 5 (blank citations in original).  The Orien Nelson

28  Declaration was neither filed with the Court nor, apparently, served on the defendants.

1    collection" and "illegally seized a firearm that was legally in Plaintiff's possession and never

2    returned it."  Compl. ¶ 35.

3        Griffin argues that the affidavit did not include false allegations, that the search warrant

4    was properly executed, and that officers did not unlawfully seize a firearm from Riese.  Riese's

5    opposition makes no mention of the affidavit, the search of his house, or Griffin's role in either,

6    much less designate specific facts in support of his allegations.  In fact, aside from requesting that

7    the Court "deny the Motion for Summary Judgment as to Defendants County of Del Norte *and*

8    *Richard Griffin*," Riese's opposition brief does not address the claims against Griffin at all.  Opp.

9    to Del Norte and Griffin mot. for summ. judg. at 26 [Dkt. No. 145] (emphasis added).  This is

10   plainly insufficient to withstand summary judgment.  Griffin's motion for summary judgment is

11   GRANTED as to the claim for unreasonable search and seizure.

12   **II.    SECOND CAUSE OF ACTION: MALICIOUS PROSECUTION UNDER 42 U.S.C.
         SECTION 1983 (DEFENDANT ALEXANDER)**

13       The elements of malicious prosecution in California are (1) criminal prosecution initiated

14   by or at the direction of the defendant, (2) malicious motivation, and (3) lack of probable cause.

15   *See, e.g., Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987); *Gressett v. Contra*

16   *Costa Cnty.*, 2013 WL 2156278, at *11 (N.D. Cal. May 17, 2013) (citing *Zamos v. Stroud*, 32

17   Cal.4th 958, 965 (2004)).  In addition, to be actionable under Section 1983, a plaintiff must prove

18   that the malicious prosecution was conducted "with the intent to deprive a person of equal

19   protection of the laws or is otherwise intended to subject a person to a denial of constitutional

20   rights." [9]  *Usher*, 828 F.2d at 562; *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th

21   Cir. 2004) ("In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show

22   that the defendants prosecuted him with malice and without probable cause, and that they did so

23   for the purpose of denying him equal protection or another specific constitutional right.") (internal

24   citations and punctuation omitted).

25       Alexander argues that summary judgment on the malicious prosecution claim is warranted

26

27   _____

28   [9] Riese alleges that "all legal procedures were ignored in order to try and harass an innocent man."
     Compl. ¶ 44.  Accordingly, for purposes of this motion, I assume that this element is met.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    because Riese cannot prove two required elements: that Alexander initiated the prosecution of

2    Riese and that Alexander lacked probable cause.  Alexander also argues that, as a prosecutor, he

3    enjoys absolute immunity from Section 1983 suits for conduct within the scope of his

4    prosecutorial duties.  In addition, Alexander argues that he is immune under Government Code

5    Section 821.6, which provides that a public employee acting within the scope of employment is

6    immune from liability for an injury caused by the employee "instituting or prosecuting any

7    judicial or administrative proceeding . . . even if he acts maliciously and without probable cause."

8         I previously determined that Government Code Section 821.6 barred Riese's cause of

9    action against Alexander for malicious prosecution under California common law.[10]  I explained

10   that initiating the criminal prosecution of Riese was within Alexander's scope of employment, and

11   he was therefore immune under Government Code Section 821.6, "even if he act[ed] maliciously

12   and without probable cause."  Dkt. No. 78 (citing Cal. Gov. Code § 821.6).  But Section 821.6

13   does not immunize state officials from Section 1983 actions.  *See, e.g., MK Ballistics Sys. v.*

14   *Simpson*, 2007 WL 2022025, at *5 (N.D. Cal. July 9, 2007) (Section 821.6 "does not bar claims

15   under 42 U.S.C. § 1983"); *Kaplan v. LaBarbera*, 58 Cal. App. 4th 175, 180, 67 Cal. Rptr. 2d 903

16   (1997) ("State immunity statutes do not offer protection from actions brought under 42 United

17   States Code section 1983.").

18        However, independent of Section 821.6, "a state prosecutor is entitled to absolute

19   immunity from liability under § 1983 for violating a person's federal constitutional rights when he

20   or she engages in activities 'intimately associated with the judicial phase of the criminal

21

22

23

24

_____

25   [10] Riese's complaint states causes of action against Alexander for malicious prosecution under
     Section 1983 (second cause of action) and for malicious prosecution under California common
26   law (seventh cause of action).  Alexander moved to strike the common law claim for malicious
     prosecution under California's anti-SLAPP statute.  Section 1983 causes of action are not subject
27   to anti-SLAPP motions to strike and Alexander, appropriately, did not move to strike the Section
     1983 malicious prosecution action.
28

United States District Court
Northern District of California

process.'"[11]  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  This absolute immunity bars claims for malicious prosecution against a prosecutor, even where the prosecutor lacks probable cause.  *See, e.g., Imbler*, 424 U.S. at 431 ("in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under s 1983"); *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001) (prosecutors' absolute immunity "covers the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution"); *Sanders v. Hallinan*, 2005 WL 61491, at *4 (N.D. Cal. Jan. 11, 2005) ("absolute immunity applies to a prosecutor's initiation of a prosecution *even when the prosecutor lacks probable cause*") (emphasis in original) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259 (1993)).

Riese argues that Alexander cannot claim prosecutorial immunity because Alexander denies that he was involved in the prosecution of Riese.  *See* Opp. to Alexander Mot. at 12-13.  Similarly, in his joint opposition to Del Norte's and Richard Griffin's motions for summary judgment, Riese argues that Section 821.6 does not apply because Alexander "was not instituting or prosecuting a proceeding against Plaintiff when he committed the acts complained of and this section does not apply to him."  Opp. to Del Norte's and Richard Griffin's Mots. at 25-26 [Dkt. No. 145].[12]

Riese's argument is fatally flawed.  If Riese accepts Alexander's contention that Alexander did not institute or prosecute the criminal prosecution of Riese, then Riese has gutted his claim for malicious prosecution by conceding that the first element is missing: that Alexander initiated a criminal prosecution against Riese.  *See, e.g., Usher*, 828 F.2d at 562.  On the other hand, if Alexander instituted or prosecuted the criminal prosecution of Riese, as required for a

---

[11] A prosecutor is entitled to only qualified immunity when performing investigatory or administrative functions, or is essentially functioning as a police officer or detective.  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).  Qualified immunity would therefore apply to Riese's fabrication of evidence allegations against Alexander.  However, as discussed below, that claim fails for different reasons.

[12] Confusingly, Riese does not make this argument in his opposition to *Alexander's* motion for summary judgment [Dkt. No. 148], but in his joint opposition to *Del Norte's and Richard Griffin's* motions for summary judgment [Dkt. No. 145].

United States District Court
Northern District of California

1   claim of malicious prosecution, then the claim is barred by Alexander's absolute immunity for for

2   conduct within the scope of his prosecutorial duties.  *See, e.g., Imbler*, 424 U.S. at 431.

3          Riese argues that he has presented evidence that Alexander "put in motion a chain of

4   events leading to the prosecution of Plaintiff [which] is sufficient to meet the first element of a

5   malicious prosecution claim," directly contradicting his assertion that Alexander did not institute

6   or prosecute the criminal prosecution of Riese.  Dkt. No. 148 at 5.  Indeed, there is evidence that

7   Alexander received Detective Doyle's investigative report of the Safeway incident and forwarded

8   it to the California Department of Justice, along with a request for "the Office of the Attorney

9   General to pursue the prosecution of Mr. Riese," and that the letter informing Riese of the criminal

10  charges was stamped with Alexander's signature and bore Alexander's letterhead.  Perhaps this

11  evidence, if it was developed further, would create a question of fact whether the prosecution of

12  Riese was initiated by or at the direction of Alexander is a question of fact.  But for the reasons

13  stated above, it would be a Pyrrhic victory at best: if Riese's prosecution was indeed initiated by

14  or at the direction of Alexander, then Alexander is immune.  If it was not, then Riese has not met

15  the elements of malicious prosecution.

16         At oral argument, counsel for Riese argued that Alexander cannot claim prosecutorial

17  immunity because Alexander had already recused himself from Riese's prosecution at the time

18  that Alexander directed that the criminal prosecution of Riese be commenced.  Counsel cited *Butz*

19  *v. Economou*, 98 S. Ct. 2894, 2905 (1978) and *Barr v. Matteo*, 360 U.S. 564 (1959) in support.

20  Those cases are not factually similar to this case, but I assume that counsel cited them for the

21  general proposition that an official's immunity only extends to acts within the scope of the

22  official's duties.  Assuming, for the sake of argument, that Alexander's recusal means that he

23  cannot avail himself of prosecutorial immunity, the malicious prosecution claim still fails because

24  there was probable cause for Riese's arrest.  *See, e.g., Smith v. Almada*, 640 F.3d 931, 944 (9th

25  Cir. 2011) ("probable cause is an absolute defense to malicious prosecution") (citation omitted).

26         Under California law, there is probable cause for the initiation of a criminal prosecution if

27  "it was objectively reasonable for the defendant to suspect the plaintiff had committed a crime.'"

28  *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1164 (9th Cir. 2011) (citation omitted).  "Whether

probable cause existed on the facts known to the defendant is a question of law for the court," but "[w]hat facts the defendant knew is an issue of fact for the jury, but only to the extent the scope of the defendant's knowledge is disputed." *Id.* (citation omitted).

If it could be argued that Alexander initiated or instituted the prosecution of Riese, he did not do so until after he received Doyle's investigative report in late September 2011, which he forwarded to the Attorney General along with a request that the Attorney General "pursue the prosecution of Mr. Riese."[13]  Alexander Decl. ¶ 17, Ex. 102.  The content of that report is not disputed.  The question then is whether the report gave the prosecutor probable cause to believe that Riese had committed DUI, child endangerment, and public intoxication, i.e., whether it was objectively reasonable for the prosecutor to suspect that Riese had committed those crimes.  Based on the evidence in the record, and Riese's failure to challenge that evidence or to designate contrary evidence, I conclude that it was and that no reasonable jury could conclude otherwise.

Doyle conducted an extensive investigation into the Safeway incident, including viewing the surveillance footage of Riese, reviewing the responding officers' reports, and interviewing witnesses to Riese's conduct.  On August 25, 2011, Doyle went to the Safeway and Safeway assistant manager Durigan showed Doyle the footage of Riese in the Safeway.  Doyle wrote in his report that:

> [Riese] appeared to be very unstable and disoriented. I saw Mr. Riese in the produce aisle where he was putting produce in a cart and walking around the store. The next surveillance video showed Mr. Riese in the pharmacy aisle where he opened a tooth brush and other items while he was sitting on the floor. The next surveillance showed Mr. Riese at check stand #1.  Mr. Riese walked past the register and placed two loaves of bread on the check stand counter where the groceries are norma1ly bagged.  The checker was Ashlynn Remmington. Mr. Riese could be seen trying to put his credit card into the change return on the counter. Remmington then assisted Mr. Riese and directed him to the ATM machine. After not being able to swipe his credit card, Remmington assisted Mr. Riese by slipping his credit card for him. Mr. Riese appeared to be extremely under the influence. Other customers arrived and were in line behind Mr. Riese and had to be sent to another checker due to Mr. Riese not being able to complete his purchase.

---

[13] Deputy Attorney General Newman did not receive approval to prosecute Riese until October 26, 2011.  Newman Decl. ¶ 9.

United States District Court
Northern District of California

1    Doyle Decl. Ex. A, Doyle investigative report at page 6.

2          Doyle interviewed several Safeway employees and a Safeway customer who were in

3    Safeway at the time and observed or interacted with Riese. [14]  *See* Doyle Decl. Ex. A, Doyle

4    investigative report, Dr. Tyne interview, Seculia Ramero interview, Tiffany Foreman interview,

5    Donne McCubbin interview, Ashlynn Remmington interview.  The employees and the customer

6    stated that Riese was in Safeway around 8:00 p.m. and that he appeared to be under the influence,

7    was "barely able to walk out the store," was unable to pay for his groceries, and spoke

8    incoherently.  The Safeway employees called 911 to have officers check on Riese.  Two of the

9    employees heard Riese tell one of the responding officers that Riese had driven to the Safeway.

10   *See id.,* McCubbin interview, Remmington interview.

11          Doyle also spoke with Riese's ex-wife to determine Riese's whereabouts prior to arriving

12   at Safeway.  Ms. Riese told Doyle that on the day of the Safeway incident, she was supposed to

13   pick up their two daughters from childcare around 6:00 p.m.  Doyle Decl. Ex. A, Doyle

14   investigative report at Supplement #10.  When she arrived to pick up the girls she was told that

15   Riese had already picked them up around 4:00 p.m., and that he had arrived driving at a high rate

16   of speed and had run over several solar lights on the driveway of the child care center.  The child

17   care provider told Ms. Riese that Riese did not get out his car and that his behavior was "unusual."

18   Ms. Riese called Riese to find out where the girls were.  Riese answered the phone but was

19   speaking "gibberish" so Ms. Riese could not understand him.  She could hear her daughters in the

20   background saying "mom."  Then the phone went dead.

21          Ms. Riese said that she then panicked because Riese "does not get sleep" and she did not

22   know what medications he was taking.  She called him back but got his voicemail.  She went to

23   Riese's house looking for him but he was not there.  She looked for him at places he frequents,

24   including Safeway, Walmart, Home Depo, and his office, but did not see him.  She called and

25

26   [14] The following statements from witnesses are taken from Doyle's notes of conversations with the
     witnesses, included in Doyle's investigative report.  Doyle Decl. Ex. A, Doyle investigative report.
27   Riese did not file objections to the admissibility of any of the evidence offered by Alexander.  In
     any event, the statements are not hearsay because they are not being offered for their truth, but to
28   show that Alexander had probable cause to think that Riese had committed crimes.

United States District Court
Northern District of California

United States District Court
Northern District of California

texted him at least ten times but did not received any response.  She then decided to go to the Sheriff's Department to make a report around 7:00 p.m.  She passed by Riese's office on the way to the Sheriff's Department and saw Riese's truck "parked cross ways in the parking lot, the door is open and the hood of the truck was up."  Ms. Riese entered Riese's office and could her Riese and their oldest daughter talking in the back.  The daughter said "Daddy, Dianne [Riese's secretary] is not here, we can't give her ice cream."  Riese responded, "I locked Dianna in the closet, I'm going to give her ice cream then we will let her out."  The daughter responded, "Daddy, she is not here." Riese said, "Shut up."  When the daughter saw Ms. Riese she immediately ran to her.  Ms. Riese asked where her younger 4-year-old sister was.  The daughter responded that she was in Riese's truck.  Ms. Riese locked the older daughter into Ms. Riese's car and went to get her younger daughter from Riese's truck.  The younger daughter was crying.  Ms. Riese placed her in her own car with her other daughter.  Ms. Riese told Riese that he scared the children.  Riese called Ms. Riese a bitch.  Ms. Riese then left with her children.

Doyle asked Ms. Riese whether Riese was under the influence during this time.  She said that "there was something wrong with him and she did not know what.  She said his eyes were glazed and his statements about Dianne being in the closet and getting her ice cream was not normal behavior."  She also said that he was sweaty.  Ms. Riese also stated that their oldest daughter told Ms. Riese that Riese's driving scared her because he drove erratically and nearly caused an accident.

Doyle also spoke with the child care provider from whom Riese picked up the daughters.  *See* Doyle Decl. Ex. A, Doyle investigative report at Supplement #11.  She stated that she was not there when Riese picked up the girls, but her husband was.[15]  She said that her husband saw Riese "pull in crazy and very fast" and that he ran over several solar lights along the driveway.  Riese did not get out the car, as he usually does, but instead honked for the girls to come.  Riese ran over more solar lights on his way out.  Riese came by the next day and apologized for his behavior.  He

---

[15] The husband declined to speak with Doyle, stating that "it was a bad idea for him to talk to [Doyle] without speaking to [Riese]."  Doyle Decl. Ex. A, Doyle investigative report at Supplement #11.

1   said that he been given medication for insomnia and did not remember anything from the prior

2   day. The provider told Riese that if he behaved like that again, "he would not be taking the kids

3   and she would be calling [Ms. Riese]."

4        Doyle also interviewed Riese.  Riese told Doyle that he had been prescribed sleep

5   medication and did not know how he arrived at Safeway.  Doyle Decl. Ex. A, Doyle investigative

6   report at Supplement #6.

7        Riese argues that there was no probable cause because

8        No one saw Plaintiff drive, no one saw him drive impaired, his
         condition at Safeway was a medical condition at most, and no field
9        sobriety tests were administered at the scene.  Two police officers,
         one of them seasoned, investigated the incident and both made the
10       determination that it was a medical issue.

11   Opp. to Alexander mot. for sum. judg. at 10-11.  But Riese does not contest any of the evidence

12   presented by Alexander, including Doyle's investigation.  He ignores it.  Contrary to his assertion,

13   Riese's daughter and the childcare provider witnessed Riese's apparently impaired driving.  In

14   addition, Riese's car was parked at the Safeway and there is evidence that Riese told a responding

15   officer that he drove there.  That the responding officers did not arrest Riese does not mean there

16   was no probable cause to prosecute Riese.  Indeed, at Riese's criminal trial, one of the responding

17   officers testified that he believed that he had probable cause to arrest Riese at the time and

18   probably would have done so if Riese's girlfriend had not been available to pick him up.  Green

19   Decl. Ex. 15, Lo Trial Test. at 318:28-319:3.  More importantly, Riese was only prosecuted after

20   Doyle's extensive investigation, which included information that the responding officers did not

21   have such as Riese's apparently impaired driving with his children prior to arriving at Safeway.

22        Based on the prosecutor's review of Doyle's report, including Doyle's review of the

23   surveillance footage and his interviews with witnesses, it was objectively reasonable for the

24   prosecutor (whether Newman or Alexander) to suspect that Riese was guilty of DUI, child

25   endangerment, and public intoxication.  Riese has presented no specific facts calling the

26   reasonableness of that belief into question.  There is therefore no genuine issue for trial and

27   summary judgment on the malicious prosecution claim is GRANTED.

28

United States District Court
Northern District of California

### III.   THIRD CAUSE OF ACTION: FABRICATION OF EVIDENCE (DEFENDANTS GRIFFIN, ALEXANDER, DOYLE, PLACK)

Riese alleges that defendants Griffin, Doyle, Plack and Alexander fabricated evidence by (i) manipulating witnesses in order to obtain false statements, including Riese's ex-wife, Ms. Riese; (ii) manipulating video recordings and coercing false statements from the Safeway incident; (iii) causing law enforcement officers to "constantly" pull Riese over and administer field sobriety tests on him in an effort to obtain information about Riese being intoxicated after filing charges against him.  Compl. ¶ 50.  The complaint does not specify which defendant allegedly did which of these acts.

To support a claim for fabrication of evidence, Riese must point to evidence showing either that (1) the defendants continued their investigation of him despite the fact that they knew or should have known that he was innocent; or (2) the defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  As stated below, Riese has not pointed to evidence showing either.  The defendants' motions for summary judgment are GRANTED on the fabrication of evidence claim.

#### A.   Defendant Griffin

Riese does not clearly set forth Griffin's role in the alleged fabrication of evidence.  It is undisputed that Griffin was not involved in the Safeway incident, and Riese has presented no evidence that Griffin was involved in obtaining witnesses statements or in causing law enforcement officers to pull over Riese.  In fact, as was the case with the first cause if action, Riese's joint opposition to Del Norte County's and Griffin's motion for summary judgment does not reference the fabrication allegations at all, much less designate specific facts in support of his

United States District Court
Northern District of California

1    allegations.[16]

2        **B.    Defendant Alexander**

3        Surveillance cameras at Safeway recorded Riese at the Safeway incident.  Riese contends

4    that Alexander withheld from the defense portions of the video which showed that Riese was

5    sober when he entered the Safeway.  Compl. ¶¶ 32, 50.

6        In his motion for summary judgment, Alexander presented evidence that Safeway assistant

7    manager Durigan, not manager Ridgley, burned the disc which Ridgley provided to Alexander,

8    and that Ridgley did not know what footage was on the disc.  Green Decl. Ex 5, Ridgley Trial

9    Test. at 26:15-22, 32:22-28.  Alexander thus contends that there is no proof that he was ever

10   provided a disc that contained the allegedly missing footage.  Alexander hypothesizes that Durigan

11   in fact provided him a disc that did not include the missing footage.  Alexander also presented

12   evidence that Doyle, independent of Alexander, requested that Durigan provide him a copy of all

13   videos showing Riese in the Safeway.  Doyle submitted a declaration stating "[d]espite my request

14   from Ms. Durigan for every video that shows Plaintiff in Safeway on August 22, 2011, I am not

15   sure that I received every surveillance video pertaining to the incident."  Doyle Decl. ¶ 6.

16       In opposition to Alexander's motion, Riese states that

17           Video surveillance footage of Plaintiff at Safeway on August 22,
             2011 turned up missing as testified to by Brian Ridgley, store
18           manager, and as pointed out to Deputy District Attorney Specchio in
             an email dated December 28, 2011.  The email indicates 40 minutes
19           of that video shows Plaintiff appearing sober after first entering
             Safeway and implies that this exculpatory evidence is being
20           withheld in violation of California Penal Code Section 1054.1 and
             the *Brady v. Maryland* case.

21

22   Opp. to Alexander mot. at 6-7.  Riese also contends that

23

24   ----

     [16] I previously rejected Riese's allegation that Griffin provided false information on the affidavit in
     support of the search warrant on Riese's home.  As I stated in my order granting in part Griffin's
25   anti-SLAPP motion, "[a]s the affidavit accurately describes that the prescription pad used by Riese
     had not been used by the doctor for several years and that Riese's girlfriend no longer worked at
26   the doctor's office, and as the bulk of the affidavit describes Riese's arrest by a Brookings
     detective for attempting to pass a forged prescription, the Court does not agree that Griffin
27   intended to, or in fact did, mislead the judge or provide false information on his affidavit."  Dkt.
     No. 78 at 10.  Riese appropriately does not resurrect this argument in his opposition to Griffin's
28   motion for summary judgment.

1

2

3

4

5

> Alexander obtained video surveillance from Safeway.  It had been reviewed by Brian Ridgley prior to it being turned over and when he later reviewed it with Doyle, he stated there was footage missing. Doyle recorded this in his investigative report.  An email to Lisa Specchio-Wolfe about the missing footage and what it showed was dated several months before Plaintiff's DUI trial and constituted notice to Alexander's office of a problem with demonstrative evidence.  It is impossible to know what if anything was done as a result of this email but it is certain that the information was not conveyed to the defense.

6

7

*Id*. at 11.  Riese does not cite evidence for any of these assertions or otherwise state where in the

8

record support for these assertions can be found.  As noted above, his failure to do so is sufficient

9

basis to grant Alexander's motion for summary judgment.  *See, e.g., Carmen*, 237 F.3d at 1031

10

Nonetheless, I have examined all of the material submitted by Riese in an effort to determine

11

whether Safeway manager Ridgley's statements or the email to Specchio-Wolfe support Riese's

12

assertions.  They do not.

13

Riese's claim that Ridgley reviewed the footage prior to turning it over is false or, at a

14

minimum, inconsistent with Ridgley's own trial testimony.  At Riese's criminal trial, Ridgley

15

testified that assistant manager Durigan had recorded the footage onto a disc previously and that

16

Ridgley provided the disc to Alexander.  Ridgley testified that he did not know what footage was

17

on the disc or how many files were on the disc.  Green Decl., Ex. 5, Ridgley Trial Transcript at

18

8:22-9:6, 26:15-22, 32:5-28.  There is nothing in the record that indicates that Ridgley reviewed

19

the footage that he turned over to Alexander before he turned it over.  Accordingly, there is no

20

evidence that Ridgley had any basis to know what was on the disc—or that anything had been

21

removed from the disc.

22

There is a document within Exhibit H to the Berg Declaration, stamped CRES 000171,

23

which *appears* to be Doyle's investigative report which Riese references.  The document itself is

24

not labeled, is not signed by Doyle (it does not mention Doyle at all), and is not authenticated in

25

the Berg Declaration or anywhere else.  The statements attributed to Ridgley are hearsay.  The

26

document is therefore inadmissible.  Even if I were to consider the document, it does not support

27

Riese's allegations.  The document states, in its entirety:

28

> On Monday, 1/30/12, about 1234 hours, Brian Ridgley came into the Crescent City Police Department to view the video's [sic] I obtained

United States District Court
Northern District of California

regarding the Riese incident on 8/22/11.

I had Brian view the surveillance videos that I have from Safeway. Brian said the only video he felt was missing was another angle of Riese at check stand #1, which would shoe [sic] he's having a conversation with someone. The surveillance video I have shows Riese at check stand #1 having a conversation but I do not see who he might be having a conversation with.  Brian said he remembers he was having a conversation with a blond woman who was heavy set and he believed she had a couple of kids.  I first pointed out a heavy set woman with a white shirt and blue jeans who was the only one visible in the area.  Brian did not think it was her, then changed his mind and believed it was her.  I asked Brian how he was sure Riese was having a conversation with someone. Brian said he was working and saw Riese when he first entered that store when Riese was at check stand #1. It was obvious that the woman at check stand #2 did not have any kids with her.

Dkt. No. 147 at 64.  The document indicates that Ridgley was working at Safeway when Riese entered and that, based on his personal observations of Riese, "felt" that another angle of Riese was missing.  Ridgley did not state that he had actually seen this allegedly missing footage of Riese.[17]  Rather, it appears that, as manager, Ridgley was familiar with the available surveillance footage angles, and "felt" that one of the angles was missing from the footage Doyle had.  In light of Ridgley's unambiguous testimony that he was not involved in providing the footage to Doyle in the first instance, and therefore did not know what was on it, this document does not support an inference that footage had been removed the disc.

I assume that the referenced email to Specchio-Wolfe is the email attached as part of Exhibit G to the Berg Declaration [Dkt. No. 147 at 55].  The email is inadmissible.  It is unauthenticated and there is no indication who authored the email.  The email therefore lacks foundation, may be hearsay, and is inadmissible.[18]  In any event, the email does not support Riese's allegations.  It states, in its entirety:

---

[17] Ridgley also did not state that Riese appeared sober when he first entered Safeway.

[18] The Berg Declaration states only that Exhibit G, which includes 10 other documents, contains excerpts of Alexander's responses to requests for production; it makes no specific reference to the email.  Berg Decl. ¶ G [Dkt. No. 147].  I am only made aware of this email by reviewing all of the documents attached to the Berg Declaration.  As noted, properly authenticating and citing documents should not be, and is not, the judge's responsibility.

United States District Court
Northern District of California

> On August 22, 2011 when Michael Riese was at Safeway in Crescent City for the current case against him In Del Norte County court,
>
> The manager of the store dealt with the accused for 40 minutes when he was appearing sober but instead your colleague is focusing on the statements of the cash register
>
> I hope that 1054.1 and Brady mean something to you

Berg Decl. Ex. G.  The email states that the manager, presumably Ridgley, "dealt" with Riese for 40 minutes, but does not mention any footage of Riese.  The email therefore has no bearing on Riese's allegations regarding the footage.

There is a separate fundamental problem with Riese's allegation that Alexander withheld exculpatory evidence from Riese.  Section 1054.1 of the California Penal Code and *Brady v. Maryland*, 373 U.S. 83 (1963), which Riese cites in his opposition brief, speak to the disclosure obligations of the "prosecuting attorney" and the "prosecution."  *See* Cal. Penal Code § 1054.1 ("The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information . . . ."); *Brady*, 373 U.S. at 87 ("suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").  Whether or not the prosecution of Riese was instituted by or at the direction of Alexander or the Del Norte County District Attorney's Office, it is undisputed that Newman of the California Department of Justice, not Alexander, prosecuted the case.  Accordingly, Section 1054.1 and *Brady* impose obligations on Newman, not on Alexander.  There is no evidence that Newman failed to turn over any part of the video that Durigan provided to Doyle.

Moreover, while I assume that Alexander could be liable under Section 1983 if he tampered with evidence, there is nothing in the record to suggest that Alexander ever had access to the footage Doyle used in his investigation and which Newman used in his prosecution.  It is undisputed that Alexander and Doyle separately received footage of Riese during the Safeway incident.[19]  The record does not reflect what ultimately became of the footage provide to

---

[19] It is also undisputed that Ridgley was not involved in providing the footage to Doyle.  Ridgley Trial Test. at 9:10-15.

United States District Court
Northern District of California

Alexander.  Alexander states that he delivered it to the Crescent City Police Department "shortly" after receiving the disc from Ridgley (Alexander Decl. ¶ 13), but neither Plack, Doyle, nor Newman reference receiving the disc or any other evidence from Alexander.  The only footage which Doyle mentions in his declaration is the footage that he received directly from Durigan.  He does not mention receiving any footage from Alexander.  There is accordingly no evidence from which a reasonably jury could conclude that Alexander withheld or tampered with evidence.

Riese also alleges that Alexander agreed not to prosecute Riese's ex-wife for violating a custody and visitation order, in return for Ms. Riese providing false testimony at Riese's criminal trial.  *See* Compl. ¶¶ 27, 50.  In his motion for summary judgment, Alexander provided the deposition testimony of Ms. Riese who stated that she met with Alexander and the chief investigator of the District Attorney's Office to discuss the custody of her and Riese's children.  She informed Alexander that she would withhold the children from her ex-husband, Riese, if he appeared under the influence or otherwise incapable of taking care of them.  Alexander and the investigator told Ms. Riese that it sounded like she had good cause to withhold the children.  Alexander stated that if he received a report that she had withheld the children, he would not prosecute her because of his conflict of Riese, but he would forward the report to the Attorney General's office.  Ms. Riese testified that she and Alexander never discussed the criminal charge against Riese and that she was not offered immunity in return for testifying against Riese.  Green Decl. Ex. 6, Stephanie Riese depo. at 36:8-39:22 [Dkt. No. 144-3].  Alexander provided a declaration likewise stating that he informed Ms. Riese that it sounded like she had good cause so he would not prosecute her, "but if a report came across [his] desk, [he] would give it to the Attorney General's office because of the potential for a conflict of interest."  Alexander Decl. ¶ 9 [Dkt. No. 144-11].   Alexander claims that he and Ms. Riese did not discuss the criminal charges against Riese and that she was not offered immunity in return for testifying.  *Id.* ¶ 10.

In opposition to Alexander's motion for summary judgment, Riese contends that it was improper for Alexander not to disclose his alleged agreement not to prosecute Ms. Riese, but apparently concedes that Ms. Riese did not agree to testify against Riese in return, falsely or otherwise.  He argues that "[t]his conversation with a prosecution witness is required to be

disclosed to the defense; it is potentially prejudicial to a criminal defendant and could lead to perjured or partial testimony."  Opp. to Alexander mot. at 8.  Riese also contends that "Alexander's advice to Stephanie Riese was contrary to California law and in violation of his duties as District Attorney per the Family Law Code."  *Id.*

There are at least two problems with Riese's argument: (i) there is no evidence that Alexander told Ms. Riese that she would not be prosecuted if she withheld the children; rather, the evidence indicates that he stated that *he* would not prosecute because of the conflict with Riese, but that he would forward any report of her withholding the children to the California Attorney General's Office, and (ii) Riese provides no authority in support of his assertion that Alexander's meeting with Ms. Riese was improper or that he was required to disclose the  meeting to Riese, even though the meeting had nothing to do with the prosecution of Riese.[20]  Riese has failed to create a question of fact that there was anything improper about Alexander's meeting with Ms. Riese.

### C.  Defendant Doyle

Riese lists seven facts which, he contends, establish Doyle's liability for fabrication of evidence.  They are (quoting Riese's opposition brief):

1. His awareness that Alexander had a conflict of interest in investigating the case or prosecuting it, yet accompanying Alexander to Safeway where he retrieved video footage and talked to witnesses.

2. His awareness that Alexander had specifically requested Plack to reopen the case despite the fact there was no witness to Plaintiff driving, no witness to impaired driving by Plaintiff, and no field sobriety tests.

3. His completed investigation report ended up with Alexander, who should have been left out of the loop and not involved in the case in any manner whatsoever.

4. Disregarding evidence that Stephanie Riese had an obvious axe to grind with Plaintiff when she called Doyle back for a second interview as to the events of August 22, 2011.

---

[20] The allegation in Riese's complaint is different from what he appears to allege in his opposition brief.  The complaint alleges that Alexander fabricated evidence by entering into a "secret agreement" whereby Ms. Riese would provide false testimony against Riese in return for Alexander not prosecuting Ms. Riese.  The complaint does not allege that Alexander's failure to disclose his conversation with Ms. Riese subjects Alexander to liability.

United States District Court
Northern District of California

<div style="margin-left: 2em;">

5. The conversation between Doyle and Stephanie Riese wherein they agree between themselves that Plaintiff needed to get into trouble criminally before he would get help with his dependency on pain medication;

6. Their further conversation that Stephanie Riese would encourage her friends to make 911 calls whenever they saw Plaintiff driving.

7. His knowledge that the video footage was missing crucial views of Plaintiff when he first arrived at the Safeway store.

</div>

Opp. to Crescent City's, Plack's, and Doyle's mots. at 10-11.  Riese does not support these alleged facts with citations to the record.  Riese apparently intended to provide citations for some of these allegations elsewhere in his opposition brief, but all but one of the citations state: "Declaration of ERIC A. BERG, page ____, Exhibit ____)," with the page and exhibit left blank.[21]  *See id*. at 8-9. Riese's failure to support his allegations with fact citations is grounds for granting Doyle's motion for summary judgment.  *See, e.g., Carmen*, 237 F.3d at 1031.

In addition to that serious failing, the substance of Riese's opposition brief is inadequate to defeat summary judgment.  Riese does not explain how these allegations constitute fabrication of evidence, even assuming they are true.  They do not.  Only the final allegation—Doyle's alleged knowledge that exonerating footage was missing—could support a claim for fabrication of evidence.  However, I have reviewed the record and determined that there is no support for this allegation.  Doyle stated in what appears to be part of his investigative report that Ridgley "felt" that an angle of Riese was missing from the footage.  But there is no evidence in the record that that angle was among the footage provided to Doyle in the first instance.  As noted, it appears that Riese never asked Durigan, the Safeway assistant manager that copied the footage onto the discs provided to Alexander and Doyle, whether the allegedly missing angle was on the discs that she created.  It is undisputed that Ridgley did not copy the footage onto the discs, was not involved in any way in providing the disc to Doyle, and did not know what was on them.  His "feeling" that an angle was missing does not create a genuine question of fact that Doyle manipulated the evidence,

---

[21] The only complete citation is to the statement in the Alexander Declaration that Alexander received a packet containing Doyle's report and forwarded it to the Attorney General along with a summary prepared by Alexander.

or that if there was missing footage, that it would exonerate Riese in light of all the evidence Doyle had assembled in his report.

### D. Defendant Plack

Riese's complaint does not specify what role Plack allegedly played in fabricating evidence.  His opposition to Plack's motion for summary judgment does no better as it does not reference the allegations against Plack at all and, accordingly, fails to designate specific facts showing a genuine issue for trial, as required to withstand summary judgment.  *Celotex*, 477 U.S. at 324.  In any event, as it is undisputed that Plack was not involved in investigating the Safeway incident, interviewing witnesses, or preparing the case for trial, there is no evidence from which a jury could reasonably conclude that he fabricated evidence.

### IV.   FOURTH CAUSE OF ACTION: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS UNDER SECTION 1983 (DEFENDANTS ALEXANDER, PLACK, DOYLE, AND GRIFFIN)

To prevail on a claim for conspiracy under Section 1983, a plaintiff must prove (1) the existence of an express or implied agreement among the defendants to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. *Avalos v. Baca*, 517 F. Supp. 2d 1156, 1169 (C.D. Cal. 2007) *aff'd,* 596 F.3d 583 (9th Cir. 2010); *see also Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991).

Defendants Alexander, Plack, Doyle, and Griffin argue that there is no evidence that any of the defendants conspired with each other.  Only Riese's opposition to Alexander's motion addresses this cause of action.  The relevant section states, in its entirety,

> All of the Defendants in this action have filed self-serving declarations that they haven't conspired to do anything and know of no such conspiracy. Since most potential witnesses to contrary evidence are current or former employees of the entities involved, it is impossible for Plaintiff to refute their statements. Plaintiff would rely on the allegations of his complaint and his entire deposition; however, Plaintiff will not burden the Court with that transcript.

Dkt. No. 148 at 11-12.

This argument fails.  It is basic procedural rule that allegations in Riese's complaint cannot be used to defeat summary judgment.  *See, e.g., First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968) ("a party cannot rest on the allegations contained in his complaint in

opposition to a properly supported summary judgment motion made against him"). And while I normally applaud litigants' efforts not to burden the Court, providing evidence in opposition to a motion for summary judgment is not a burden; it is required. If anything, Riese's failure to designate specific facts in support of his claims burdens the judicial process as it results in unnecessary litigation over issues which he has conceded. Having failed to provide any facts in support of his conspiracy claim, the claim fails.

The conspiracy claim also fails because, as discussed above, there is no evidence that the defendants deprived Riese of his civil rights. Without evidence that Riese was deprived of his civil rights, his claim for conspiracy to deprive him of his civil rights fails. *See, e.g., Hernandez v. City of Napa*, 781 F. Supp. 2d 975, 997 (N.D. Cal. 2011) ("a conspiracy, even if established, 'does not give rise to liability under § 1983 unless there is an actual deprivation of civil rights' resulting from the conspiracy") (citing *Woodrum v. Woodward County, OK,* 866 F.2d 1121, 1126 (9th Cir.1989)). The defendants' motions for summary judgment on the conspiracy claims are GRANTED.

## V.   FIFTH CAUSE OF ACTION: SUPERVISORY LIABILITY FOR CONSTITUTIONAL VIOLATIONS UNDER SECTION 1983 (DEFENDANTS PLACK, DOYLE, AND GRIFFIN)

A supervisor is liable for constitutional violations committed by his subordinates "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Riese's opposition briefs do not address this cause of action. Like his conspiracy claim, this cause of action fails because Riese has presented no evidence of constitutional violations. Without underlying constitutional violations, there is nothing for which the defendants can be liable for as supervisors. *See, e.g., Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005) ("Because we conclude that Plaintiff's constitutional rights were not violated by the search, Plaintiff cannot maintain a § 1983 action for supervisory liability against Sheriff Moore, Captain Ausburn, or Sergeant Gosnell for failure to train.").

Riese's claims against Griffin and Doyle also fail because there is no evidence that Griffin, a Del Norte County Sheriff's Deputy, or Doyle, a detective with the Crescent City Police

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Department, supervised, or had supervisory authority over, any of the other alleged actors.  Griffin

2   Decl. ¶ 1; Doyle Decl. ¶¶ 24-25.

3          The defendants' motions for summary judgment on the supervisory liability claims are

4   GRANTED.

5   **VI.   SIXTH CAUSE OF ACTION: MUNICIPAL LIABILITY FOR
        UNCONSTITUTIONAL CUSTOM OR POLICY (DEFENDANTS CRESCENT
6        CITY AND DEL NORTE COUNTY)[22]**

7          A plaintiff suing a municipality under section 1983 for the acts of one of its employees

8   must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a

9   municipal policy or custom was the moving force behind the constitutional deprivation.  *See*

10  *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978).  Accordingly, a municipality

11  cannot be held liable under section 1983 for the acts of an employee if the employee did not

12  commit a constitutional violation.  *See, e.g., Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th

13  Cir. 1996) (explaining that municipality is not liable under Section 1983 for acts committed

14  pursuant to municipal policy or custom unless the plaintiff shows that the individual actors

15  actually violated his constitutional rights).  Riese's municipal liability claims fail because he has

16  presented no evidence of constitutional deprivations.  The defendants' motions for summary

17  judgment on the municipal liability claims are GRANTED

18  **VII.  EIGHT CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL
        DISTRESS (DEFENDANTS PLACK AND DOYLE)[23]**

19

20         Riese has presented no arguments, much less facts, in support of his cause of action for

21  intentional infliction of emotional distress against Plack and Doyle.  As I have already discussed,

22  my independent review of the record reveals that there is no evidence that Plack or Doyle did

23  anything improper, certainly nothing that was "extreme and outrageous," as required for

24

25  [22] Riese has named both Crescent City and the Crescent City Police Department as defendants.
    The Crescent City Police Department is not a proper party as it is a department of the City; not a
26  separate municipal agency.  Likewise, Riese has named both Del Norte County and the Del Norte
    County Sheriff's Department as defendants.  Only Del Norte County is a proper defendant.

27  [23] I previously granted defendants Griffin's and Alexander's motions to strike this cause of action
    as to them under California's anti-SLAPP statute.  *See* Dkt. No. 78.

28

intentional infliction of emotional distress.  Plack's and Doyle's motions for summary judgment on the intentional infliction of emotional distress cause of action are GRANTED.

<div align="center">

**CONCLUSION**

</div>

Defendants' motions for summary judgment on all remaining causes of action are GRANTED.  Judgment shall be entered in accordance with this order.

**IT IS SO ORDERED**.

Dated: August 19, 2014

WILLIAM H. ORRICK
United States District Judge